ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| FAUSTINO XAVIER BETANCOURT COLON<br><br>APELANTE<br><br>V.<br><br>TIVOLI FOODS & SPORT INC.<br><br>APELADA | KLAN202301095 | *APELACION* procedente del Tribunal de Primera Instancia Sala de HUMACAO<br><br>Caso Núm. YB2023CV00219<br><br>Sobre:<br><br>Petición de Orden |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2024.

Este Recurso de *Apelación* presentado por Faustino Xavier Betancourt Colón (la parte apelante) el 6 de diciembre de 2023. Se trae como parte apelada a Tivoli Foods & Sport, Inc.

En este recurso se solicita la revocación de la Sentencia emitida el 3 de noviembre de 2023 y archivada y notificada a las partes el 6 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala de Humacao (en adelante TPI).

En dicha Sentencia el TPI declaró Ha Lugar la "Moción de Desestimación" presentada por la parte apelada, y desestimó con perjuicio, por falta de legitimación activa de parte del apelante y esa desestimación de la reclamación presentada en su contra fue con perjuicio.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración,

confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

## I.

El 3 de agosto de 2023, el Sr. Betancourt Colón, aquí apelante, presentó esta "Demanda" contra la parte apelada, por violación a la Ley ADA. En esencia, alegó que visitó el 31 de julio de 2023 un negocio y que dicho negocio lo opera y operaba para la fecha de su visita la parte aquí apelada Tivoli Foods & Sports, Inc. (en adelante apelada).

Indicó que a pesar de su curiosidad causada por expresiones sobre el sitio de amigos cercanos como la carta ecléctica del Tivoli, que permite probar platos nuevos frecuentemente, decoración moderna y música agradable, al visitarlo sufrió la sensación de discrimen contra el en esa propiedad.

Por ello. continuó alegando el apelante, que a menudo tiene citas de reuniones informales con sus colegas y amigos, pues el restaurante proporciona el ambiente ideal para relajarse y conversar. Luego de esa alegación reclama que tiene mucha dificultad para desplazarse por dichas instalaciones.

Reclama que en el "exterior de la propiedad no existe una ruta de acceso accesible (sic) desde los estacionamientos o la acera hasta una entrada accesible sin escaleras que permita el desplazamiento de personas en dispositivos de movilidad de manera segura desde el estacionamiento hasta el interior de la propiedad en violación de los requisitos existentes", entre otros reclamos de violación por barreras arquitectónicas existentes tanto en interior como exterior de la propiedad.

El Demandante reclama que esa discriminación en su contra, en la propiedad es por razón de su discapacidad.

El 10 de octubre de 2023, el apelado presentó Moción de Desestimación. En esta reclamó que el allí demandante no sufrió daños reales y por ello indican que carece de legitimación activa para lo reclamado en este caso. También reclaman que el apelante comete abuso del derecho con fin de lucro personal o con la intención de lograr una transacción nominal. Por ello y otros planteamientos solicitan que se desestime la demanda y se impongan honorarios por temeridad.

El 30 de octubre de 2023 el apelante presentó Moción de Oposición a Moción de Desestimación en donde resume, según su interpretación el derecho bajo la Ley ADA y que ello le permite presentar este tipo de reclamación.

El 3 de noviembre de 2023 el TPI suscribió Sentencia concediendo la desestimación que solicitaba el apelado. Dicha Sentencia fue notificada el 6 de noviembre de 2023. El 6 de diciembre de 2023 se presentó la apelación que aquí atendemos.

En el Recurso de Apelación plantean los siguientes señalamientos de error:

Primer Señalamiento: Erró el TPI al no aplicar al estándar de decisión bajo la regla 10.2 para resolver la moción de desestimación.

Segundo Señalamiento: Erró el TPI al determinar que la parte apelante no tenía standing como cliente bona fide y como tester de Derechos Civiles.

Tercer Señalamiento: Erró el TPI al no reconocer como un daño el encuentro directo con las barreras arquitectónicas relacionadas a la discapacidad de la parte apelante.

Cuarto Señalamiento: Erró el TPI al no reconocer como un daño el efecto disuasorio causado por el conocimiento del apelante de las barreras arquitectónicas existentes en la propiedad en controversia.

La parte apelada presentó su alegato en oposición. El pasado 28 de febrero de 2024 celebramos Vista de Argumentación Oral a la que comparecieron los abogados de todas las partes.

Con el beneficio de las comparecencias escritas de ambas partes y lo argumentado por las partes en la vista de argumentación oral, resolvemos.

## II.

### A.

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, le permite al demandado solicitar que se desestime la demanda en su contra antes de contestarla. R. Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, 5ta ed., San Juan, Lexisnexis de Puerto Rico, Inc., 2010, pág. 266. La precitada regla dispone lo siguiente:

> *Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable.*

Ante una moción de desestimación, "el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). Asimismo, deberá interpretar las alegaciones de forma conjunta, liberal y de la manera más favorable posible en favor del demandante. *Torres, Torres v. Torres et al.*, 179 DPR 481, 502 (2010). Es decir, "[l]a demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar". *Aut. Tierras v. Moreno & Ruiz Dev. Corp*, *supra*, a la pág. 428. Ello solo aplicará a aquellos

hechos alegados de forma "clara y concluyente, que de su faz no den margen a dudas". *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).

Al atender este tipo de moción, el tribunal deberá tener en cuenta que, conforme lo dispone la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, la demanda sólo tiene que contener "una relación sucinta y sencilla de la reclamación demostrativas de que el peticionario tiene derecho a un remedio", por lo que la norma procesal que rige establece que las alegaciones solo buscan "notificarle a la parte demandada a grandes rasgos, cuáles son las reclamaciones en su contra." *Torres, Torres v. Torres et al.*, *supra*, a la pág. 501. Es por esto por lo que una demanda no será desestimada, salvo que se demuestre "que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar". *Aut. Tierras v. Moreno & Ruiz Dev. Corp*, *supra*, a la pág. 428. Por consiguiente, el asunto a considerar es, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". *Pressure Vessels P.R. v. Empire Gas P.R.*, *supra*, a la pág. 505. Finalmente, este mecanismo procesal no debe ser utilizado en aquellos casos que envuelven un alto interés público, excepto que no haya duda de que, de los hechos alegados en la demanda, no es posible conceder un remedio adecuado al demandante. *Aut. Tierras v. Moreno & Ruiz Dev. Corp*, *supra*, a la pág. 429.

**B.**

En general, los tribunales tienen la obligación y responsabilidad de decidir los casos que se le presentan ante su consideración, incluso aquellos que con gusto evitaría. No obstante, como doctrina de autolimitación y de prudencia en el

ejercicio del Poder Judicial, los tribunales solo pueden resolver aquellas controversias que sean justiciables. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727 (2022). El concepto de justiciabilidad "impone el deber de examinar si los casos que traban una controversia de índole constitucional cumplen con determinados e indispensables requisitos previo a una expresión". *Noriega v. Hernández Colón*, 135 DPR 406, 420 (1994). Lo anterior, pues, "los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *E.L.A. v. Aguayo*, 80 DPR 552, 558-559 (1958). Por consiguiente, para poder ejercer de forma válida nuestra facultad de interpretar la ley, es necesario que el caso presente una controversia auténtica, definida y concreta, dentro de un contexto adversativo. De lo contrario, procede la desestimación del recurso presentado porque, como no existe una controversia real entre los litigantes, el tribunal debe abstenerse de adjudicarlo.

El Tribunal Supremo de Puerto Rico ha resuelto que una controversia no es justiciable en las siguientes circunstancias, a saber: (1) cuando la cuestión a resolver es una cuestión política; (2) cuando el pleito no está maduro; (3) cuando, después de iniciado el pleito, hechos posteriores lo convierten en académico; (4) cuando lo que se procura obtener es una opinión consultiva; y (5) cuando las partes no poseen legitimación activa para incoar la acción presentada. *Noriega v. Hernández Colón*, *supra*, a la pág. 421.

## C.

Nuestra jurisprudencia define el término de legitimación activa como "la capacidad que se requiere a la parte promovente

de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Hernández, Santa v. Srio. De Hacienda*, supra, a la pág. 739 (2022).

Al amparo de esta doctrina, la parte promovente tiene que demostrar lo siguiente: (1) que sufrió un daño claro y palpable; (2) que dicho daño es real, inmediato y preciso, entiéndase, no abstracto o hipotético; (3) la existencia de un nexo causal entre la acción que se ejercita y el daño alegado, y (4) que la causa de acción surge al amparo de la Constitución o de alguna ley. *Fund. Surfrider y otros v. A.R.Pe.*, 178 DPR 563, 572 (2010). En la jurisdicción federal, se han reconocido criterios similares. Véase, *Spokeo, Inc. v. Robins*, 578 US 330, 338 (2016). ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision").

Es la parte demandante quien tiene el peso de la prueba para demostrar que cumple con todos estos criterios. *Fund. Surfrider y otros v. A.R.Pe.*, *supra*, a la pág. 585; *Spokeo, Inc. v. Robins*, *supra*, a la pág. 338. Como en el caso que nos ocupa, cuando el pleito se encuentra en sus etapas iniciales, entiéndase, en la presentación de la demanda, corresponde al demandante alegar con claridad aquellos hechos que demuestren cada uno de los elementos que sustentan su legitimación. *Spokeo, Inc. v. Robins*, *supra*, a la pág. 338; *Warth v. Seldin*, 422 US 490, 518 (1975).

Para cumplir con el primer requisito, es necesario que el demandante haya sufrido un daño particular. Esto es, que alegue una lesión personal. Ahora bien, esto, de por sí, no es suficiente. Sino que, el daño, además de ser particularizado, debe

concretizarse.  El daño es concreto cuando ocurre *de facto*. O sea, que para el demandante poseer *standing* debe: (1) alegar haber sufrido una lesión, y (2) que, de hecho, el daño es real y existente. *Spokeo, Inc. v. Robins*, *supra*, a la pág. 339-340.

Ahora bien, un daño intangible puede ser concreto. *Íd.*, a la pág. 340.  En tal caso, hay que considerar: (1) si el alegado daño intangible está íntimamente relacionado a un daño que ha sido tradicionalmente demandable, y (2) el juicio del Congreso y/o nuestra Asamblea Legislativa, ya que ésta tiene el poder de identificar y definir una conducta que puede resultar en un daño por el cual pueda surgir un caso o controversia. *Íd.*, a la pág. 341. No obstante, el hecho de que el Congreso y/o nuestra Asamblea Legislativa identifique un daño intangible, y decida concretizarlo mediante un estatuto que garantice al perjudicado un derecho a reclamar, no implica que el demandante, de forma automática, satisface el requisito de daño requerido para ostentar legitimación activa. *Íd.*   En palabras sencillas, aún en el contexto de una violación estatutaria se requiere la existencia de un daño concreto. *Íd*.

Por ende, la creación de una causa de acción por incumplimiento con una obligación o prohibición estatutaria no releva a los tribunales de su facultad para determinar si el demandante sufrió un daño concreto. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021).  Así, la Corte Suprema ha expresado lo siguiente:

> *For standing purposes, therefore, an important difference exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff 's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But*

*under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court. Íd.*

Por lo anterior, es importante distinguir entre dos tipos de demandantes: (1) el que presenta una reclamación con el propósito de remediar un daño recibido, y (2) el que meramente busca asegurar que el demandado cumpla con la ley. *Íd.* De otra forma, estaríamos avalando que un demandante ileso pueda demandar a cualquier persona por el siempre hecho de que esta violentó un estatuto federal, aun cuando el demandante no ha recibido un daño concreto. Y, como dice la Corte Suprema Federal, "and, of course, to obtain some money via the statutory damages". *Íd.*

**D.**

La *Ley para Estadounidenses con Discapacidades*, conocida en inglés como *American with Disabilities Act*, 42 USC sec. 12188 (Ley ADA), fue promulgada por el Congreso de los Estados Unidos de América, entre otros fines, para brindar un mandato nacional –claro y completo– para la eliminación de la discriminación contra las personas con diversidad funcional. 42 USC sec. 12101(b)(1). (Traducción nuestra); *Spector v. Norwegian Cruise Line Ltd.*, 545 US 119, 128 (2005). Asimismo, mediante la citada ley, el Gobierno Federal pretende proporcionar estándares claros, sólidos, consistentes y ejecutables que aborden la discriminación en contra de la referida población. 42 USC sec. 12101(b)(2). (Traducción nuestra).

La Ley ADA tiene el propósito de eliminar la discriminación contra las personas con discapacidad. 42 USC sec. 12101. En lo pertinente, el Título III de la Ley ADA provee que:

*Ningún individuo será discriminado por razón de discapacidad, en el disfrute pleno e igualitario de los bienes, servicios, facilidades, privilegios, ventajas o acomodos de ningún lugar de acomodo público por el dueño, arrendador, (arrendatario), o manejador de un lugar de acomodo público.* (Traducción nuestra).

Entre las prácticas de discrimen vedadas está el no remover barreras arquitectónicas cuando su remoción es fácilmente alcanzable. 42 USC sec. 12182 (b)(2)(A)(iv). Aun cuando pueda demostrarse que la remoción de las barreras no es fácilmente alcanzable, deberán hacerse accesible, mediante métodos alternos, los bienes, servicios, facilidades, privilegios, ventajas, o acomodos brindados. 42 USC sec. 12182 (b)(2)(A)(v).

Como remedio, el discapacitado podrá solicitar un interdicto solicitando una orden para que se alteren las facilidades, de modo que se hagan accesibles para personas con diversidad funcional. 42 USCA sec. 12188.

Al determinar si el demandante posee derecho para solicitar el *injunction*, el tribunal debe evaluar la existencia de una amenaza real e inminente de una barrera arquitectónica que puede causar un daño futuro. (Traducción nuestra.) *Santiago Ortiz v. Caparra Ctr. Assocs., LLC*, 261 F. Supp. 3d 240, 248 (2016), citando a *Dudley v. Hannaford Bros.*, 333 F.3d at 305-06 (1er Cir. 2003).

Es posible que una persona discapacitada visite lugares de alojamiento público con el fin de identificar y remediar violaciones a la Ley ADA. A estas personas se les ha denominado como testers. Aunque el hecho de ser un tester no es un impedimento para que el demandante presente su causa de acción, éste deberá satisfacer los requisitos de legitimación activa. *Laufer v. Mann Hospitality, L.L.C.*, 996 F.3d 269, 63 NDLR P 63.

Para establecer un caso *prima facie* de discrimen bajo el Título III de la Ley ADA, un demandante debe establecer que: (1) es un individuo cualificado con una discapacidad bajo la Ley ADA; (2) el demandado opera un lugar de acomodo público, y (3) fue discriminado por su discapacidad. *Medina–Rodríguez v. Fernández Bakery*, Inc., 255 F.Supp.3d 334, 341 (2017).

## E.

## Imposición de honorarios de abogado por temeridad

La imposición de honorarios de abogado procede en derecho únicamente cuando una parte ha actuado con temeridad o frivolidad.[1] Sobre el particular, la Regla 44.1(d) de Procedimiento Civil establece, en lo pertinente, lo siguiente:

> (d) Honorarios de abogado. En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.[…][2]

A pesar de que la citada Regla no define en qué consiste una conducta temeraria, la jurisprudencia la ha descrito como "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables".[3] (Énfasis suplido). Así, la penalidad que se impone por conducta temeraria tiene por fin "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte".[4]

También se ha indicado que el propósito de la imposición de honorarios por temeridad es penalizar a la parte que por su

---

[1] *Torres Vélez v. Soto Hernández*, 189 DPR 972, 993 (2013), citando a *Santiago v. Sup. Grande*, 166 DPR 796, 820 (2006).
[2] 32 LPRA Ap. V, R. 44.1(d).
[3] *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010).
[4] *Íd.*, en la pág. 505.

"terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito".[5] Es decir, que es temerario quien torna necesario un pleito frívolo, o provoca su indebida prolongación, obligando a la otra a incurrir en gastos innecesarios.[6]

Determinada la existencia de temeridad, el tribunal deberá tomar en cuenta una serie de factores para poder calcular la cantidad que concederá, a saber: "(1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados".[7]

## III.

Este caso trata sobre el primero de los tres requisitos de la doctrina de legitimación activa: si el demandante sufrió un daño claro y palpable. Entiéndase, si fue discriminado por su discapacidad y ese discrimen le causó un daño real. La posición del apelante es que sufrió un daño concreto en calidad de tester y que para ello no tiene que alegar daños más específicos como lo mencionó en la demanda y en la argumentación. Reclama además el apelante que tampoco tiene que reclamar cuantía para tener legitimación activa. En cambio, la parte apelada argumenta que, no se ha demostrado un daño específico por el cual se pueda resarcir y que por ello no posee legitimación activa el demandante ante el TPI y aquí apelante.

---

[5] *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342 (2011), citando a *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 866 (2008)); *Torres Vélez v. Soto Hernández*, *supra*.
[6] *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170, 188 (2008); *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005); *Domínguez v. GA Life*, 157 DPR 690, 706 (2002).
[7] *C.O.P.R. v. S.P.U.*, *supra*.

Por tratarse de una moción al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, nos corresponde evaluar las alegaciones bien hechas por el Sr. Betancourt Colón en su "Demanda". En su reclamación, la parte apelante alega que es una persona con discapacidad. Sostiene que, el 31 de julio de 2023, visitó las facilidades de la parte apelada, el cual es un lugar de acomodo público, según la Ley ADA.[8] Aduce que, su visita fue con el propósito de disfrutar las ofertas gastronómicas del lugar, y hacer uso de los servicios ofrecidos a los clientes y al público en general.[9] Arguyó que, durante su visita, encontró barreras arquitectónicas desde la entrada de acceso, en los mostradores o counters y en los baños.[10] Afirmó que, dichas barreras interfirieron con su capacidad de usar y disfrutar los bienes, servicios, privilegios y acomodos ofrecidos en el lugar.[11] Aunque indica haber sufrido dificultad para desplazarse y sufrir momentos incómodos y humillantes,[12] no los detalló ni reclamó una cuantía por dichos alegados daños.

En cuanto a los mostradores o counters, expuso que, son muy altos para atender a personas que utilizan un scooter o una silla de ruedas.[13] Apuntó que, debido a esto no pudo acceder a los servicios cómodamente.[14] En cuanto al baño, mencionó que no es posible movilizarse, maniobrar o girar con facilidad dentro de este.[15] Además, manifestó que, en el baño, en particular la parte inferior del lavamanos, no cumple con las medidas requeridas así como tampoco las otras áreas del servicio

---

[8] Véase, alegación número 9 y 10.
[9] Véase, alegación número 10.
[10] Véase, alegación número 11(b).
[11] Véase, alegación número 10.
[12] Véase, alegación número 11.
[13] Véase, alegación número 11 (b).
[14] *Íd*.
[15] Véase, alegación número 11 (c).

sanitario.[16] Admitió el apelante a través de su abogado, en la argumentación que nadie realizó medidas en el local u que las alegadas violaciones que indican incumplimiento con medidas específicas requeridas se basan en la observación a distancia del apelante. Invocó legitimación como tester,[17] y manifestó su intención de regresar al local, con el fin "verificar personalmente la eliminación de las barreras arquitectónicas".[18]

Tras evaluar las alegaciones que preceden, nos resulta forzoso concluir que Sr. Betancourt Colón no tendría un remedio en ley, por lo que la desestimación del pleito es procedente en derecho. No especificó los daños que dice reclamar, admitió que varias de sus alegaciones son especulativas, a base de una observación a distancia y ello le priva de legitimación activa para presentar esta demanda.

Según el derecho esbozado en el acápite anterior, para establecer un caso *prima facie* de discrimen bajo el Título III de la Ley ADA, el demandante tiene que haber sido discriminado por su discapacidad. **De la "Demanda" radicada por la parte apelante no surge que éste haya sufrido un daño particular o concreto que le otorgue legitimación activa para reclamar bajo las disposiciones de la Ley ADA. Sino que**, **más bien**, **y así lo admite la parte apelante en su escrito y lo argumentó su abogado durante la vista de argumentación oral**, **su alegada legitimación surge como *tester*. No obstante, lo anterior**, vemos necesario aclarar que **en la jurisdicción federal ya se ha reiterado que el simple hecho**

---

[16] Véase, alegación número 11 (c).
[17] Véase, alegación número 19 (a).
[18] Véase, alegación número 19 (a).

**de ser *tester* no confiere legitimación activa al demandante si éste no cumple con los requisitos necesarios para ello**.

Somos del criterio que, **el hecho de ser un consumidor *bona fide* tampoco otorga de por sí legitimación activa al demandante**, **si dicho consumidor no prueba la concurrencia de los elementos necesarios para tener *standing***.

Corresponde al apelante, Sr. Betancourt Colón, alegar con claridad aquellos hechos que demuestren cada uno de los elementos que sustentan su legitimación, incluyendo el haber sufrido un daño real, claro, palpable e inmediato, no abstracto o hipotético.

En el caso de autos la parte apelante solo alega con especificidad que visito El Tivoli el 31 de julio de 2023 y que el mismo es un lugar abierto al público, lo que le convierte en una facilidad que tiene que cumplir con los requisitos de Ley ADA.

El apelante, en sus alegaciones, no logra demostrar haber sufrido un daño *de facto*, entiéndase, una lesión real y existente. En cuanto al baño, la parte apelante no alega haber sufrido daño alguno, sino de haber visualizado ciertos incumplimientos con la ley federal. Es importante hacer notar que el apelante tiene dificultad para caminar, pero camina por cuenta propia y por ello admitió el abogado del apelante en la vista de argumentación oral que su cliente no usa una guagua tipo van como vehículo para desplazarse de un lugar a otro. De hecho, el abogado del apelante admitió que este no llegó al estacionamiento de El Tivoli en una guagua tipo van, a pesar de que reclama múltiples violaciones en dicho estacionamiento, que haría imposible estacionar guaguas tipo van, pero él apelante no tiene una y nada midió ni en el estacionamiento ni en el exterior o interior del restaurante. Como

ya expresamos, **un demandante ileso que solo procura que el demandado cumpla con la ley no satisface los criterios necesarios para tener legitimación activa**, **pues no puede probar un daño concreto**. El hecho de que el Congreso y/o nuestra Asamblea Legislativa identifiquen un daño intangible, y decidan concretizarlo mediante un estatuto que garantice al perjudicado un derecho a reclamar, no implica que el demandante, de forma automática, satisface el requisito de daño requerido para ostentar legitimación activa. **En el contexto de una violación estatutaria se requiere la existencia de un daño concreto**.

Por ende, el Sr. Betancourt Colón no puede tener *standing* por un encuentro o un alegado reconocimiento a distancia de una barrera arquitectónica, pues, aunque el demandado pueda estar en violación a la ley federal, si el reclamante no recibió un daño concreto y particular a consecuencia de dicha barrera, está impedido de reclamar. Así lo ha reconocido la Corte Suprema de los Estados Unidos. "The deprivation of a right created by statute must be accompanied by some concrete interest that is affected by the deprivation, in order to satisfy the injury-in-fact requirement for Article III standing". *TransUnion LLC v. Ramirez*, *supra*.

Por último, nos parece importante recalcar que, aunque se podrían realizar inferencias sobre el historial de litigio del apelante, lo cierto es que, se desprende con claridad que el fundamento por el cual se declaró Ha Lugar la "Moción de Desestimación" fue por la falta de legitimación activa, y no por otra razón.

Ciertamente, el pleito instado por el Apelante es uno frívolo, pues no existe elemento alguno que permita concederle una

indemnización a su favor. La insistencia y actitud desprovista de fundamentos del Apelante, han obligado a la parte contraria a asumir innecesariamente las molestias, gastos e inconvenientes de tramitar y defenderse de un pleito que pudo ser evitado. Como se ha reiterado por el Tribunal Supremo de Puerto Rico, "no es meritorio poner en marcha la maquinaria judicial en busca de un remedio cuando no existe tal daño".[19] Debido a esto, consideramos meritorio la imposición de cinco mil dólares ($5,000.00) en honorarios de abogados a la parte Apelante, pagaderos a la parte Apelada en el término de treinta (30) días.

En último orden, referimos al licenciado José Carlos Vélez Colón al Comité de Ética Profesional de Abogados y Abogadas del Tribunal Supremo de Puerto Rico para que examine la posibilidad de conducta anti-ética de abuso del derecho en la presentación reiterada de estos pleitos. Además, debemos traer a la atención del Tribunal Supremo de Puerto Rico la conducta (personal y profesional) exhibida por el licenciado Vélez Colón en los casos presentados en los estados de California y Oregón, reseñados en el voto particular y de Conformidad del Juez Rodríguez Casillas.

Por todo lo anteriormente expuesto, es forzoso concluir que no fueron cometidos los errores señalados por el Apelante y que el TPI procedió de manera correcta al desestimar el pleito.

## IV.

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, confirmamos la "Sentencia" apelada, emitida por el Tribunal de Primera Instancia, Sala de Humacao e imponemos honorarios de abogado a pagarlos por la

---

[19] *Sánchez v. Secretario de Justicia*, 157 DPR 360 (2002).

parte apelante a la parte apelada por la cantidad de cinco mil dólares ($5,000.00) pagaderos en el término de treinta (30) días.

En adición se refiere al licenciado José Carlos Vélez Colón al Comité de Ética Profesional de Abogados y Abogadas del Tribunal Supremo de Puerto Rico para que examine la posibilidad de conducta anti-ética de abuso del derecho en la presentación reiterada de estos pleitos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Rodríguez Casillas emite voto particular de conformidad. El Juez Salgado Schwarz está conforme con la determinación del Panel, y se une a las expresiones del Juez Rodríguez Casillas, haciendo constar de forma particular que, dada la magnitud evidente del abuso de derecho desplegado por la parte Apelante, la sanción impuesta resulta inferior a la proporcionalidad de los efectos nocivos a nuestro ordenamiento del comportamiento que hoy reprochamos.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| FAUSTINO XAVIER BETANCOURT COLÓN<br><br>Apelante<br><br>v.<br><br>TIVOLI FOODS & SPORT INC.<br><br>Apelada | KLAN202301095 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Humacao<br><br>Caso Núm.: YB2023CV00219<br><br>Sobre: Petición de Orden |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

**VOTO PARTICULAR DE CONFORMIDAD
DEL JUEZ ROBERTO RODRÍGUEZ CASILLAS**

*"Something is rotten in the state of Denmark"*,[20]
Hamlet, de William Shakespeare.

En San Juan, Puerto Rico a 30 de abril de 2024.

Aunque estoy conforme con el resultado alcanzado y los fundamentos expuestos en la Sentencia mayoritaria, mi sentido de olfato reclama un voto particular con la intención de atender el tema puntual sobre el abuso del derecho en la figura del *"tester"*, bajo la ley *Americans with Disabilities Act, infra,* y el Canon 34 del Código de Ética Profesional de Abogados.[21]

**-I-**

El señor Faustino Xavier Betancourt Colón (en adelante, el señor Betancourt Colón o apelante) alega que el **31 de julio de 2023** visitó el restaurant Tivoli Foods & Sports, Inc., (en adelante, Tivoli Foods), luego de que sus amigos —con los que tiene citas y reuniones informales— le hablaran del "carácter versátil y curioso del lugar".

---

[20] *"Algo huele a podrido en el estado de Dinamarca".*
[21] Canon 34.-Instigación o Gestión de Pleitos.

No obstante, el señor Betancourt Colón aduce que durante su visita a Tivoli Foods tuvo dificultad para desplazarse por las instalaciones, ya que existen barreras arquitectónicas —y como persona con discapacidad física—[22], se vio en una penosa situación al solicitar la ayuda de terceros, provocándole momentos de incomodidad y de humillación.

Por ese incidente, el **3 de agosto de 2023** el señor Betancourt Colón presentó una demanda contra Tivoli Foods, donde alegó la existencia de barreras arquitectónicas y de diseño a las que se enfrentó —tanto en el interior como en el exterior del establecimiento— por dificultades de movilidad.[23]

En cuanto a las barreras en el interior del restaurant, en resumen, el apelante alegó que usa un *scooter* eléctrico de tres ruedas para moverse, por lo cual, las rampas en el interior son demasiado inclinadas, angostas y carecen de barras de apoyo; además, de tener una mala señalización, lo que provoca complicaciones en el acceso seguro. También, la altura del mostrador principal limitó la interacción cómoda y segura con el personal, lo cual afectó su experiencia gastronómica. Añadió que el espacio de los baños es insuficiente y la ubicación de elementos como el lavamanos no es correcta, lo cual dificultó el uso del mismo. Además, los baños no cuentan con barras de apoyo por lo que, la transferencia del *scooter* al inodoro o lavamanos resultó ser dificultosa y aumentó el riesgo de accidentarse.[24]

En cuanto a las barreras en el exterior, en síntesis, alegó que no hay una ruta o acera accesible desde el establecimiento hacia la

---

[22] Surge del expediente que el apelante padece de hipertensión, diabetes mellitus tipo II; neuropatía diabética; osteoartritis; artritis inflamatoria; hidrocefalia; insuficiencia cardiaca congestiva; deformidad en ambos pies; obstrucción pulmonar crónica; apnea del sueño; enfermedad articular degenerativa de la columna lumbar; y, túnel carpiano. Debido a la insuficiencia cardiaca, en febrero de 2012 se le implantó un desfibrilador automático, para prevenir una muerte súbita. Véase, Apéndice de la Parte Apelante, págs. 2-3.
[23] Véase, Apéndice de la Parte Apelante, págs. 1-22.
[24] Véase, Apéndice de la Parte Apelante, págs. 5-11, 13-16.

entrada del restaurant. Tampoco el estacionamiento cuenta con suficientes espacios accesibles y adecuados para camionetas, lo cual restringe la inclusión de personas con discapacidad. Añadió que el pavimento estaba deteriorado, con grietas y baches. Además, el estacionamiento no cuenta con señalización clara para identificar los estacionamientos para discapacitados.[25] Esto impidió que pudiera identificar donde podía aparcar legalmente su vehículo adaptado.

Así, expresó que todas las barreras antes mencionadas le afectaron emocionalmente, disminuyendo su autoestima, autonomía e independencia. Generando sentimientos de frustración, indignación e incomodidad, presentando riesgos de caídas y dificultando la movilidad autónoma. Por ello, solicitó como remedio un interdicto permanente de conformidad con el Título III de la *Americans with Disabilities Act* (en adelante, Ley ADA),[26] para que ordenara a Tivoli Foods a eliminar las barreras arquitectónicas. Asimismo, —y en caso de que el establecimiento continuara con las políticas y prácticas discriminatorias— solicitó el cierre y clausura del mismo. Además, reclamó honorarios de abogados, costas, gastos del litigio y cualquier otro remedio que procediera como cuestión de derecho. No obstante, no reclamó daños alegadamente sufridos.[27]

El **10 de octubre de 2023**, Tivoli Foods compareció mediante *Moción de Desestimación,*[28] al amparo de la Regla 10.2 de las de Procedimiento Civil, *infra.* En síntesis, alegó que el señor Betancourt Colón dejaba de exponer una reclamación que justificara la concesión de un remedio, ya que carecía de legitimación activa para incoar la acción, debido a que no había demostrado haber sufrido un daño real, inmediato y preciso; no abstracto o hipotético. Alegó,

---

[25] Véase, Apéndice de la Parte Apelante, págs. 4-5, 11-13.
[26] 42 USC sec. 12101.
[27] Véase, Apéndice de la Parte Apelante, págs. 20-21.
[28] Véase, Apéndice de la Parte Apelante, págs. 23-53.

además, que el apelante había presentado sobre cien (100) reclamos en un periodo de dos (2) años ante los foros de primera instancia de nuestra jurisdicción reclamando alegadas violaciones a la Ley ADA. Tivoli Foods destacó los siguientes casos:

1. *Faustino Betancourt Colón v. Rc Air-Conditioned Services Corp,* SJ2019CV07518
2. *Faustino Betancourt Colón v. Acoba Realty Development, Inc.,* CA202001438
3. *Faustino Betancourt Colón v. Wal-Mart Puerto Rico, Inc.,* SJ2020CV04245
4. *Faustino Betancourt Colón v. Héctor Sullivan, Inc.,* SJ2020CV045666
5. *Faustino Betancourt Colón v. Municipio de San Juan,* SJ2020CV05455
6. *Faustino Betancourt Colón v. Imperial Realty Enterprises, Inc.,* SJ2020CV05829
7. *Faustino Betancourt Colón v. A&M Contract, Inc.,* SJ2020CV06550
8. *Faustino Betancourt Colón v. ELA,* BY2020CV03955
9. *Faustino Betancourt Colón v. University of Puerto Rico Parking System, Inc.,* 5J2020CV0685 1
10. *Faustino Betancourt Colón v. Plaza Encantada, Inc.,* CA2021CV00128
11. *Faustino Betancourt Colón v. Inmobiliaria Isla Verde, Inc.,* CA2021CV00458
12. *Faustino Betancourt Colón v. Hospital Menonita de Caguas,* CG2021CV00863
13. *Faustino Betancourt Colón v. Ralph's Food Warehouse,* HU2021CV00372
14. *Faustino Betancourt Colón v. Purico LLC,* SJ20202CV04627
15. *Faustino Betancourt Colón v. Pizza City Inc.,* CA2021CV00983
16. *Faustino Betancourt Colón v. Restaurants Operators Inc.,* SJ2021CV02512
17. *Faustino Betancourt Colón v. Encanto Restaurants,* SJ2021CV02524
18. *Faustino Betancourt Colón v. Municipio de Guaynabo,* BY2021CV01590
19. *Faustino Betancourt Colón v. Municipio de Toa Alta,* BY2021CV01593
20. *Faustino Betancourt Colón v. Municipio de Carolina,* CA20121CV00992
21. *Faustino Betancourt Colón v. Municipio de Cataño,* BY2021CV01594
22. *Faustino Betancourt Colón v. Autoridad de Carreteras,* FA2021CV00304
23. *Faustino Betancourt Colón v. J. Pica y Cía, LLC,* CG2021CV01039
24. *Faustino Betancourt Colón v. BV Properties,* CG2021CV01042
25. *Faustino Betancourt Colón v. Presbyterial Community Hospital, Inc.,* SJ2021CV02680

26. *Faustino Betancourt Colón v. Three n One Corporation*, CA2021CV01055
27. *Faustino Betancourt Colón v. Arcos Dorados Puerto Rico LLC*, FA2021CV00326
28. *Faustino Betancourt Colón v. Universidad de Puerto Rico*, SJ2021CV02732
29. *Faustino Betancourt Colón v. Wendco of Puerto Rico, Inc.*, CG2021CV01081
30. *Faustino Betancourt Colón v. Supermercado Caslop, Inc.*, SJ2021CV02775
31. *Faustino Betancourt Colón v. HHM Real Estate, Inc.* AR2021CV00612
32. *Faustino Betancourt Colón v. Subs Island Development Inc.*, SJ2021CV02894
33. *Faustino Betancourt Colón v. Party City of PR Inc.*, BY2021CV01882
34. *Faustino Betancourt Colón v. Walgreens of Puerto Rico, Inc.* HU2021CV00473
35. *Faustino Betancourt Colón v. Zulyer Pharmacy, Inc.*, HU2021CV00485
36. *Faustino Betancourt Colón v. Plaza Caparra, LLC*, BY2021CV02012
37. *Faustino Betancourt Colón v. BPP Retail Properties LLC*, BY2021CV03808
38. *Faustino Betancourt Colón v. Don Maceta Inc*, MZ2021CV01323
39. *Faustino Betancourt Colón v. ASG Investment Corporation*, SJ2021CV07028
40. *Faustino Betancourt Colón v. International Restaurant Services Inc.*, CA2021CV02907
41. *Faustino Betancourt Colón v. Plaza Cupey Garden*, SJ2021CV07284
42. *Faustino Betancourt Colón v. First Bank Puerto Rico*, SJ2021CV07433
43. *Faustino Betancourt Colón v. FTC Corporation*, SJ2021CV07859
44. *Faustino Betancourt Colón v. RB Maketplace Inc.*, SJ2021CV07918
45. *Faustino Betancourt Colón v. Eneri Inc.*, SJ2021CV0729
46. *Faustino Betancourt Colón v. Cortes Hermanos*, SJ2021CV08014
47. *Faustino Betancourt Colón v. Industria Lechera de PR*, SJ2021CV08286
48. *Faustino Betancourt Colón v. Neceo Inc.*, SJ2021CV08499
49. *Faustino Betancourt Colón v. Kimco PR Management Corp.*, CA2021CV03561
50. *Faustino Betancourt Colón v. Pep Boys*, SJ2021CV08543
51. *Faustino Betancourt Colón v. Banco Popular de PR*, SJ2021CV08567
52. *Faustino Betancourt Colón v. Vaquería Tres Monjitas Inc.*, SJ2021CV08603
53. *Faustino Betancourt Colón v. Autoshow LLC*, SJ2022CV00784
54. *Faustino Betancourt Colón v. Capri SE*, CA2022CV011089

55.    *Faustino Betancourt Colón v. Municipio de Juana Diaz*, PO2022CV0119
56.    *Faustino Betancourt Colón v. Total Energies Marketing*, BY2022CV02233
57.    *Faustino Betancourt Colón v. OfficeMax Puerto Rico*, BY2022CV02237
58.    *Faustino Betancourt Colón v. Autoridad del Distritito del Centro de Convenciones*, SJ2022CV03415
59.    *Faustino Betancourt Colón v. Hospital Regional de Bayamón*, BY2022CV02238
60.    *Faustino Betancourt Colón v. Banco Popular*, SJ2022CV03418
61.    *Faustino Betancourt Colón v. Caparra Center Associates LLC*, BY2022CV02242
62.    *Faustino Betancourt Colón v. RUA LLC*, SJ2022CV03513
63.    *Faustino Betancourt Colón v. El Yaque, Inc.*, SJ2022CV0325
64.    *Faustino Betancourt Colón v. Seritage Kmt Finance LLC*, BY2022CV02408
65.    *Faustino Betancourt Colón v. Paseo Las Cumbres Inc.*, SJ2022CV03721
66.    *Faustino Betancourt Colón v. Restaurante Cambalache*, BY2022CV02530
67.    *Faustino Betancourt Colón v. Supermercados Máximo, Inc.*, BY2022CV02586
68.    *Faustino Betancourt Colón v. Municipio de Cidra*, CG2O22CV01657
69.    *Faustino Betancourt Colón v. Montehiedra Holding LLC*, SJ2022CV0452
70.    *Faustino Betancourt Colón v. Panadería Mallorca*, SJ2022CV04792
71.    *Faustino Betancourt Colón v. BV Propertices Inc.*, CG2O22CV01808
72.    *Faustino Betancourt Colón v. HMH Real Estate Inc.*, AR2021CV00576
73.    *Faustino Betancourt Colón v. Municipio de Toa Baja*, BY2022CV02965
74.    *Faustino Betancourt Colón v. Columbia College Corporation*, CG2022CV02001
75.    *Faustino Betancourt Colón v. Costa Bahía Hotel*, PO202CV0273
76.    *Faustino Betancourt Colón v. Hacienda La Tormenta*, HU2O22CV01242
77.    *Faustino Betancourt Colón v. Tidel Realty, Corp.* CA2O22CV01411
78.    *Faustino Betancourt Colón v. Paseo Las Cumbres y otros*, SJ2022CV03721
79.    *Faustino Xavier Betancourt Colón v. Panadería Barcelona Inc. y otros*, BY2022CV06132
80.    *Faustino Xavier Betancourt Colón v. Prosperidad LLC y otros*, CA2022CV04075
81.    *Faustino Xavier Betancourt Colón v. Nave, Inc. y otros*, CG2022CV04308
82.    *Faustino Xavier Betancourt v. Supermercado Máximo, Inc.* BY2023CV03424
83.    *Faustino Xavier Betancourt v. Cidrines Ashford, LLC* SJ2023CV05950

**84.** *Faustino Xavier Betancourt v. Great Taste, Inc.* DO2023CV00124

**85.** *Faustino Xavier Betancourt v. Nagoya Tiki, Inc.* SJ2023CV05178

**86.** *Faustino Xavier Betancourt v. Montehiedra Holding, LLC* SJ2023CV05170

**87.** *Faustino Xavier Betancourt v. Plaza las Américas* SJ2023CV04587

**88.** *Faustino Xavier Betancourt v. Fazaa Corp.* SJ2023CV04564

**89.** *Faustino Xavier Betancourt v. Jbao Investments, Corp.* CG2023CV01534

**90.** *Faustino Xavier Betancourt v. Fortuna China* MT2023CV00316

**91.** *Faustino Xavier Betancourt v. Hilaserra Inc.* LP2023CV00059

**92.** *Faustino Xavier Betancourt v. Yue Niu Feng* LP2023CV00059

**93.** *Faustino Xavier Betancourt v. Encanto Restaurants, Inc.* CA2023CV00646

**94.** *Faustino Xavier Betancourt v. Verónica Beyley y Otros* BY2023CV01229

**95.** *Faustino Xavier Betancourt v. Coca Cola Music Hall* SJ2023CV01961

**96.** *Faustino Xavier Betancourt v. La Fonda Gourmet, LLC* LU2023CV00194

**97.** *Faustino Xavier Betancourt v. Golden Ocean, Inc.* GB2023CV00825

**98.** *Faustino Xavier Betancourt v. Restaurante El Obrero, Inc.* SJ2023CV08664

**99.** *Faustino Xavier Betancourt Colon v. Tivoli Foods & Sport Inc.,* YB2023CV00219

**100.** *Faustino Xavier Betancourt Colón v. Rakuten LLC,* SJ2023CV09027

**101.** *Faustino Xavier Betancourt Colón v. Del Campo al Norte Restaurant Corporation,* HA2023CV00269

Sobre estos casos, Tivoli Foods alegó que en cada uno de ellos el señor Betancourt Colón realizó **las mismas alegaciones**. Entiéndase, en todos ellos adujo ser un cliente frecuente, que adquiere sus productos y que estos tienen alegadas barreras arquitectónicas. Hizo hincapié en que el representante legal del apelante —José Carlos Vélez Colón— también lo representa en **todos** los casos señalados, y que entre ambos, existe una estrategia legal caprichosa. También, alegó que la mayoría de los casos son transados por cuantías nominales debido a que las partes demandadas no deseaban invertir su tiempo y recursos en defenderse y litigar las reclamaciones inmeritorias.

Además de estos casos, Tivoli Foods resaltó dos casos que se presentaron ante este foro intermedio donde el señor Betancourt Colón figuraba como parte demandante. Estos son: *Faustino Betancourt v. Municipio de Carolina*[29] y *Faustino Betancourt v. AAA Car Rental Inc. y otros.*[30] En ambos casos, dos paneles hermanos confirmaron sentencias del foro primario que **desestimaron las reclamaciones** que, según alega Tivoli Foods, son **idénticas** al caso de epígrafe. En específico, resaltó que en ambos casos el foro de instancia desestimó las causas de acción por falta de legitimación activa. Ante este cuadro, Tivoli Foods le solicitó al tribunal de instancia que desestimara la demanda en su contra para así evitar que el señor Betancourt Colón sometiera a la parte demandada a un litigio innecesario.

El **30 de octubre de 2023**, el señor Betancourt Colón se opuso mediante *Moción en Oposición a Moción de Desestimación.*[31] En resumen, arguyó que no procedía la desestimación al amparo de la Regla 10.2 de las de Procedimiento Civil, *infra,* ya que su demanda cumplía con establecer el caso *prima facie* bajo el Título III de la Ley ADA, y a ello, se le suma que es *"cliente bona fide"*, además, que tiene legitimación activa en calidad de *"tester"* de derechos civiles. En este último, define al *"tester"* de derechos civiles como una ***"persona que tiene la intención específica de buscar y denunciar el discrimen, aunque ello represente someterse al discrimen o a condiciones poco seguras"***.[32] Señaló, además, que su historial de litigio y la identidad de su representante legal no podían utilizarse para restarle credibilidad o legitimación.

El **3 de noviembre de 2023**, el TPI emitió una *Sentencia* mediante la cual declaró *Ha Lugar* la *Moción de Desestimación*

---

[29] KLAN202200617 (CA2021CV00992).
[30] KLAN202300477.
[31] Véase, Apéndice de la Parte Apelante, págs. 54-106.
[32] Véase, Apéndice de la Parte Apelante, pág. 80.

presentada por Tivoli Foods.[33] En esencia, resolvió que de la demanda no surge un daño particular o concreto que le conceda legitimación activa al señor Betancourt Colón para reclamar bajo la Ley ADA. Razonó que, aun cuando el apelante alega tener legitimación bajo la figura del *"tester"*, en la jurisprudencia federal es norma reiterada que el simple hecho de ser *"tester"* no confiere legitimación activa para demandar. En particular, señaló que:

> *[…], el hecho de ser un consumidor bona fide tampoco otorga de por sí legitimación activa al demandante, si dicho consumidor no prueba la concurrencia de los elementos necesarios para tener standing. Corresponde al demandante alegar con claridad aquellos hechos que demuestren cada uno de los elementos que sustentan su legitimación, incluyendo el haber sufrido un daño real, claro, palpable e inmediato, no abstracto o hipotético.[34]*

Inconforme, el **6 de diciembre de 2023** el señor Betancourt Colón compareció antes nos mediante *Recurso de Apelación* y señaló cuatro (4) errores:

> **Primer Señalamiento:** *Erró el TPI no aplicar el estándar de decisión bajo la regla 10.2 para resolver la moción de desestimación.*
>
> **Segundo Señalamiento:** *Erró El TPI al determinar que la parte apelante no tenía standing como cliente bona fide y como tester de derechos civiles.*
>
> **Tercer Señalamiento:** *Erró el TPI al no reconocer como un daño el encuentro directo con las barreras arquitectónicas relacionadas a la discapacidad de la parte apelante.*
>
> **Cuarto Señalamiento:** *Erró el TPI al no reconocer como un daño el efecto disuasorio causado por el conocimiento del apelante de las barreras arquitectónicas existentes en la propiedad en controversia.*

El **9 de enero de 2024**, Tivoli Foods compareció mediante *Alegato de la Parte Apelada* y esbozó los mismos planteamientos presentados en su *Moción de Desestimación*. Sin embargo, añadió a su escrito reportajes de medios noticiosos estadounidenses que reseñaban las múltiples demandas *inmeritorias* bajo la ADA que el

---

[33] Véase, Apéndice de la Parte Apelante, págs. 166-173.
[34] Véase, Apéndice de la Parte Apelante, pág. 172.

representante legal del señor Betancourt Colón —Lcdo. José Carlos Vélez Colón— presentó, en su carácter personal (obesidad mórbida) en varios estados.[35] En el reportaje —**Lawyer weighs-in on obese serial filer**— se referían al licenciado Vélez Colón como un "*serial filer*",[36] dado la frivolidad de una serie de casos presentados bajo la ADA,[37] contra restaurantes, tanto en el estado de California como Oregon.

Ante las alegaciones y las controversias presentadas, el **9 de febrero de 2024** citamos a las partes a una Vista Oral, mediante la Regla 80 del Reglamento del Tribunal de Apelaciones,[38] a efectuarse el **29 de febrero de 2024**, a las 10:30 a.m., en nuestra sede. Se les notificó a las partes que deberían preparase para ilustrar a este foro sobre los siguientes asuntos:

> **a.** *¿La legitimación activa de nuestro derecho procesal civil admite una acción civil en que la parte demandante no reclame daños sufridos?*
> **b.** *¿Los tribunales de Puerto Rico pueden sostener una acción civil bajo la Americans with Disabilities Act (ADA), sin que la persona con impedimento reclame daños sufridos?*
> **c.** *La figura del "tester" que alega por la parte Apelante, ¿tiene cabida en el derecho procesal civil de Puerto Rico?*
> **d.** *¿Un "tester" puede reclamar daños?*
> **e.** *¿Un "tester" puede reclamar, a través de su abogado, una compensación extrajudicial como parte de un "acuerdo" de no demandar?*
> **f.** *¿Un "tester" puede reclamar, a través de su abogado, una compensación judicial como parte de un "acuerdo" de no demandar?*
> **g.** *¿Cómo los incisos d, e y f no inciden en el Canon 34 de Ética Profesional?[39]*

Llegado el **29 de febrero de 2024**, las partes comparecieron a la Vista Oral por conducto de sus representantes legales.

---

[35] Véanse, Nick Morgan, Mail Tribune, Camera captures Florida man who is suing Medford restaurants, 12/11/2019. https://mailtribune.com/newa/top-stories/camera-captures-florida-man-who-is-suing-medford-restaurant/; Nick Morgan, Mail Tribune, Lawyer wighs-in on obese 'serial filer', 10/19/2019. https://ktvl.com/news/lawyer-has-taken-on-obese-man-suing-medford-restaurants-before-and-won.

[36] *Id.*

[37] Mail Tribune, Morbidly obese' man drop ADA lawsuit against Medford restaurant, 5/2/2020, https://newmexico.networkofcare.org/aging/news-article-detail.aspx?id=113054

[38] 4 LPRA Ap. XXII-B.

[39] El inciso g no debió indicar que el Canon 34 de Ética Profesional de Abogados y Abogadas, contiene los incisos a, e, f. Ello es un error involuntario.

En su turno, el abogado del apelante reiteró que el señor Betancourt Colón es una persona con discapacidad que se autodenomina *"tester"* de derechos civiles en virtud del Título III de la Ley ADA, razón por la cual, tiene legitimación activa en el caso de epígrafe. En ese sentido, lo ha representado legalmente en los cientos de casos antes indicados y sus honorarios son contingentes y pagados conforme se dispone en la Ley ADA. Arguyó que, como *"tester",* resultaba suficiente que el apelante identificara las barreras arquitectónicas y presentara la acción civil bajo la Ley ADA. Negó que, como norma, acepte transacciones extrajudiciales, ni acostumbra a solicitar las mismas. No reconoció que los pleitos incoados y la repetición en la alegaciones constituyan una violación al Canon 34 de Ética Profesional.

Por su parte, los representantes legales de Tivoli Foods trajeron ante nuestra consideración que, en lo que va del año corriente, el Lcdo. José Carlos Vélez Colón ha radicado dieciséis (16) demandas a nombre del señor Betancourt Colón sobre petición de orden bajo la Ley ADA. Estas son:

1. *Faustino Xavier Betancourt Colón v. Santa Real Realty Inc. D/B/A Santa María Shopping Center; Arcos Dorados Puerto Rico, LLC; Western Auto of Puerto Rico, Inc.; H/N/C Advance Auto Parts*, GB2024CV00022.
2. *Faustino Xavier Betancourt Colón v. Plaza Caparra, LLC; Plaza Barak Two Thousand Drugs LLC; Caribbean Retail Ventures, Inc.; New York Department Stores de Puerto Rico, Inc.; Quintana Restaurant Management LLC; Magdalena Inc.; Laboratorio Clínico Plaza Caparra, Inc.*, GB2024CV00023.[40]
3. *Faustino Xavier Betancourt Colón v. New Sabroso China LLC; El Pavo Asado, Inc.; Municipio de San Juan*, SJ2024CV00162.
4. *Faustino Xavier Betancourt Colón v. Mozzarella Corp.; Unlimited Group Corporation; Municipio de San Juan*, SJ2024CV00167.
5. *Faustino Xavier Betancourt Colón v. La Caoba, Inc.; La Cada de las Bombillas, Inc.; Municipio de San Juan*, SJ2024CV00173.
6. *Faustino Xavier Betancourt Colón v. Garden Max & Power Equipment Inc.; La Lucense Bakery, Inc.; Municipio de San Juan*, SJ2024CV00186.
7. *Faustino Xavier Betancourt Colón v. Raltrisan Electric 3 Corp.; Los Pioneros Rest., Municipio de San Juan*, SJ2024CV00189.

---

[40] Esta causa de acción se trasladó a la Corte Federal del Distrito de Puerto Rico.

8. *Faustino Xavier Betancourt Colón v. Arrope, Inc.; OR-Pro Medical Industrial Laboratory* SJ2024CV00220

9. *Faustino Xavier Betancourt Colón v. Kimpo Garden Corp.; Computers House Inc.; Municipio de San Juan*, SJ2024CV00221.

10. *Faustino Xavier Betancourt Colón v. El Quarto Rey, Inc.*, SJ2024CV00258.

11. *Faustino Xavier Betancourt Colón v. SCI Puerto Rico Inc.; El Mofongo Ahogado Inc.*, SJ2024CV00677.

12. *Faustino Xavier Betancourt Colón v. US Real Estate LLC; Cupey Bowling Entertainment Center Inc., Pueblo Inc.; Brodersen Enterprises of Puerto Rico, Inc.; Hornofino Coffee Shop LLC; Gallery Cuisine, Inc.; y The Partners MXPR LLC*, SJ2024CV01409.

13. *Faustino Xavier Betancourt Colón v. P T, Inc.*, SJ2024CV01532.

14. *Faustino Xavier Betancourt Colón v. Fine Arts Cinema, Corp.; Banco Popular de Puerto* Rico, SJ2024CV01616

15. *Faustino Xavier Betancourt Colón v. PLM Food Service, Inc.*, SJ2024CV01689.

16. *Faustino Xavier Betancourt Colón v. Plaza Las Vegas, Corp.; Puerto Rico Telephone Company, Inc.; Humberto Vidal, Inc.; Burlington Coat Factory of Puerto Rico, LLC; Empresas Torres Batista, Inc.; Rent Express By Berrios Inc.; PR Retail Stores, Inc.; Arcos Dorados Puerto Rico, LLC*, VB2024CV00105.[41]

Tivoli Foods también trajo ante nuestra consideración otras causas de acciones radicadas por el Lcdo. José Carlos Vélez Colón en la Corte de Federal para el Distrito de Puerto Rico, a saber:

1. *Suárez-Torres v. Panadería y Respostería España, Inc.*, 988 F.3d 542 (1st Cir. 2021).

2. *Suarez-Torres v. Asencio*, 2019 WL 10734653 (1st Cir. July 9, 2019).

3. *Medina-Rodríguez v. Fernández Bakery, Inc.*, 255 F.Supp.3d 334 (1st Cir. 2017).

4. *Suarez-Torres v. Sandia, LLC*, 2017 WL 590307 (February 14, 2017).

5. *Medina-Rodríguez v. Farmacia Medina Inc.*, 302 F.Supp. 3d 479, 481 (D.P.R. 2017).

Añadió Tivoli Foods que el Lcdo. José Carlos Vélez Colón había radicado causas de acción bajo la Ley ADA, *supra*, en otras jurisdicciones por derecho propio. De estas causas de acciones surgieron reportajes de medios noticiosos estadounidenses que reseñaban las múltiples demandas que el Lcdo. José Carlos Vélez Colón había presentado contra pequeños comerciantes en la costa oeste de los Estados Unidos. Estos son algunos de los casos:

1. *Velez v. IL Fornaio (Am.) Corp.*, 808 F.Appx. 581 (9th Cir. 2020).

---

[41] Este tribunal advino en conocimiento de estas por medio de la plataforma digital Consulta de Casos del Poder Judicial.

   **2.** *Velez v. Catalina Hotel Ops, Inc.,* 2019 WL 3059469
      (C.D. Cal. Jan. 30, 2019)
   **3.** *Velez v. Cloghan Concepts, LLC,* 387 F.Supp.3d 1072
      (SD Cal. 2019).
   **4.** *Velez v. Jack Sprats LLC,* 2020 WL 1845812 (D. Or.
      Feb. 24, 2020).
   **5.** *Velez v. Catalina Hotel Ops, Inc.,* 2019 WL 3059469
      (C.D. Cal. Jan. 30, 2019).

Así las cosas, este tribunal se dispuso a exponer la normativa jurídica aplicable al caso de autos.

**-II-**

**A.**

El Congreso de los Estados Unidos promulgó la Ley ADA, *supra,* para brindar un mandato nacional claro y completo para prohibir el discrimen contra las personas con diversidad funcional o discapacidad. El estatuto federal define discapacidad como *un impedimento físico o mental que limita sustancialmente una o más actividades importantes en la vida de un individuo, un historial de dicho impedimento o que se considere que tiene dicho impedimento.*[42] Se entiende por actividad importante en la vida de un individuo cuidarse a sí mismo, realizar tareas manuales, ver, oír, comer, dormir, caminar, pararse, levantar objetos, inclinarse, hablar, respirar, aprender, leer, concentrarse, pensar, comunicarse y trabajar.[43]

En Puerto Rico se creó la Ley de La Carta de Derechos de las Personas con Impedimentos, Ley Núm. 238 de 31 de agosto de 2004, según enmendada (en adelante Ley 238-2004).[44] Esta ley, al igual que la Ley ADA, busca asegurar el derecho a la igualdad de todos los ciudadanos con impedimentos.[45] Para propósitos de la Ley 238-2004, "persona con impedimentos" se define como *toda persona que tiene un impedimento físico, mental o sensorial que limita sustancialmente una o más actividades esenciales de su vida; tiene*

---

[42] 42 USCA sec. 12102 (1).
[43] 42 USCA sec. 12102 (2) (A).
[44] 1 LPRA secc. 512 *et seq.*
[45] *Id.*, Exposición de Motivos.

*un historial o récord médico de impedimento físico, mental o sensorial; o es considerada que tiene un impedimento físico, mental sensorial.*[46]

En el Artículo 4 de la Ley 238-2004 se enumeran una serie de derechos generales que todas las personas con impedimento tendrán. Entre estos, se encuentra el derecho a que se le garanticen plenamente todos los derechos, beneficios, responsabilidades y privilegios en igualdad de condiciones a los de una persona sin impedimentos.[47] Las personas con impedimentos tienen derecho, además, a disfrutar y tener acceso a programas de servicio recreativos, deportivos, educativos y culturales en la comunidad.[48] Tienen derecho, también, a disfrutar de un ambiente pacífico, de tranquilidad y solaz.[49]

Por su parte, las prohibiciones establecidas en la Ley ADA, se prohíbe el discrimen en las instalaciones públicas. Y es que, como regla general, ninguna persona puede ser discriminada por motivos de discapacidad con respecto al disfrute pleno e igualitario de los bienes, servicios, instalaciones, privilegios, ventajas o alojamiento por parte de cualquier persona que posea, arriende (o arrienda a), u opera una instalación pública.[50]

En lo pertinente a esta controversia, el Título III de la Ley ADA recoge las medidas concernientes a las entidades que se consideran instalaciones públicas. Para fines de la Ley ADA, se consideran instalaciones públicas, entro otros, los restaurantes, barras y cualquier otro establecimiento que sirvan comida o bebidas.[51]

A raíz de ello, se considera discrimen cuando las instalaciones públicas no realizan *"modificaciones razonables"* a sus políticas, prácticas o procedimientos, cuando dichas modificaciones son

---

[46] 1 LPRA secc. 512.
[47] 1 LPRA secc. 152a (a).
[48] 1 LPRA secc. 152a (k).
[49] 1 LPRA secc. 152a (m).
[50] 42 USCA sec. 12182 (a).
[51] 42 USCA sec. 12181 (7) (b).

necesarias para que una persona discapacitada pueda tener acceso a los servicios, privilegios, ventajas o acomodos.[52] No obstante lo anterior, una entidad puede estar exenta de cumplir con lo establecido en el Título III si demuestra que las modificaciones alteran fundamentalmente la naturaleza de sus servicios, programa o actividad.[53]

Por otro lado, la legislación federal denomina estas modificaciones como acciones "*readily achievable*", o acciones fácilmente alcanzables. Para determinar si una acción es fácilmente realizable, los factores a considerar incluyen:

**(A)** *la naturaleza y el costo de la acción necesaria;*
**(B)** *los recursos financieros generales de la instalación o instalaciones involucradas en la acción, el número de personas empleadas, el efecto sobre los gastos y recursos, o el impacto de otra manera de dicha acción sobre la operación de la instalación;*
**(C)** *los recursos financieros generales de la entidad cubierta, el tamaño total del negocio de una entidad cubierta con respecto al número de sus empleados, el número, tipo y ubicación de sus instalaciones; y,*
**(D)** *el tipo de operación u operaciones de la entidad cubierta, incluyendo la composición, estructura y funciones de la fuerza laboral de dicha entidad, la separación geográfica, relación administrativa o fiscal de la instalación o instalaciones en cuestión con la entidad cubierta.[54]*

Sobre los remedios disponibles, una persona con discapacidad o diversidad funcional puede solicitar un interdicto temporero, preliminar o permanente. A esos efectos, las medidas cautelares incluirán una orden para modificar las instalaciones para que dichas instalaciones sean fácilmente accesibles y utilizables por las personas con discapacidades.[55]

Para establecer un caso *prima facie* de discrimen bajo el Título III de la Ley ADA, la parte demandante debe establecer: **(1)** que tiene una discapacidad conforme a la definición provista por la Ley ADA;

---

[52] 42 USCA sec. 12181 (b) (2) (A) (ii).
[53] *Id.*
[54] 42 USCA sec.12181 (9).
[55] 42 USCA sec. 12188.

**(2)** que la parte demandada es dueño de, arrenda u opera un establecimiento público; y, **(3)** que la parte demandada discriminó a la parte demandante por razón de su discapacidad, según lo enmarcado en la Ley ADA.[56]

Ahora bien, existen personas con discapacidades que vistan lugares de alojamiento público con el único fin de identificar y remediar las violaciones contenidas en la Ley ADA. Estas personas, denominadas *"testers"*, no están impedidas de presentar una causa de acción. No obstante, como cualquier demandante, deben cumplir con el requisito de **legitimación activa**.[57]

### B.

A tono con lo antes dicho, el Tribunal Supremo de Puerto Rico ha reiterado que, bajo el concepto de justiciabilidad, *"la intervención de los tribunales tendrá lugar solo si existe una controversia genuina entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas"*.[58] Una controversia no se considera justiciable cuando: **1)** se procura resolver una cuestión política; **2) una de las partes carece de legitimación activa**; **3)** hechos posteriores al comienzo del pleito han tornado la controversia en académica; **4)** las partes están tratando de obtener una opinión consultiva, o **5)** se intenta promover un pleito que no está maduro.[59]

Sobre la legitimación activa, nuestra jurisprudencia la define como *"la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia*

---

[56] *Marradi v. K&W Realty Inv. LLC*, 212 F. Supp. 3d 239, 245 (D. Mass. 2016).

[57] *Laufer v. Looper*, 22 F. 4th 871 (10 Circuit 2022).

[58] *Hernández Montañez v. Parés Alicea*, 208 DPR 727, 738 (2022).

[59] *Ramos Rivera v. García García*, 203 DPR 379, 393-394 (2019). Véase *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68-69 (2017), citando a *Asco. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011), y a *Noriega v. Hernández Colón*, 135 DPR 406, 421-422 (1994).

*vinculante"*.[60] No obstante, no todo el que tenga capacidad para demandar tiene acción legitimada en un pleito. Y es que, además de demostrar que tiene capacidad para demandar, la parte interesada también debe demostrar que tiene un **interés legítimo**.[61]

Lo anterior, es un mecanismo de autolimitación y de prudencia judicial cuya función principal es asegurar al tribunal que el promovente de la acción es uno cuyo interés es de tal índole que, con toda la probabilidad, habrá de proseguir su causa de acción **vigorosamente** y habrá de traer a la atención del tribunal las cuestiones en controversia.[62] La parte promovente que solicita un remedio judicial debe demostrar: *(1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso, y no abstracto o hipotético; (3) una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) que la causa de acción surge bajo el palio de la Constitución o de una ley*.[63]

En la esfera federal existe una doctrina similar a la nuestra denominada ***standing to sue***.[64] Al igual que en nuestra jurisdicción, en la esfera federal se le requiere a la parte demandante que demuestre haber sufrido un daño concreto, que se relacione con la alegada conducta de la parte demandada y que, con toda probabilidad, redundaría en una sentencia favorable para sí.[65]

**C.**

Es conocido que las alegaciones de una demanda tienen como propósito bosquejar o notificar a grandes rasgos cuáles son las reclamaciones y las defensas de las partes. En ese sentido, la Regla 6.1(a) de Procedimiento Civil dispone que una alegación que

---

[60] *Hernández Montañez v. Parés Alicea*, supra, pág. 739.

[61] *Co. Ópticos de PR v. Vani Visual Center*, 124 DPR 559, 563 (1989); citando, R. Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, pág. 132.

[62] *Co. Ópticos de PR v. Vani Visual Center*, *Id.* pág. 564; citando, *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 413 (1982).

[63] *Hernández Torres v. Hernández Colón*, 131 DPR 593, 599 (1992).

[64] Véase, *Spokeo, Inc. v. Robins*, 578 US 330, 338 (2016).

[65] *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022); citando *Lujan v. Defs. Of Wildlife*, 504 US 555, 560-561.

exponga una solicitud de remedio debe contener *"una relación sucinta y sencilla de la reclamación demostrativa de que el peticionario tiene derecho a un remedio"*.[66]

Cónsono con lo anterior, la Regla 10.2 de Procedimiento Civil establece —además de otras— la defensa de dejar de exponer una reclamación que justifique la concesión de un remedio como fundamento para solicitar la desestimación de una causa de acción.[67] En lo pertinente, la referida Regla dispone, que:

> *Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:*
> *(1) falta de jurisdicción sobre la materia;*
> *(2) falta de jurisdicción sobre la persona;*
> *(3) insuficiencia del emplazamiento;*
> *(4) insuficiencia del diligenciamiento del emplazamiento;*
> *(5) **dejar de exponer una reclamación que justifique la concesión de un remedio**;*
> *(6) dejar de acumular una parte indispensable. [...].*[68]

En lo concerniente a nuestra controversia se ha establecido que, ante la presentación de una moción de desestimación basada en la quinta defensa de dicha Regla, los foros judiciales *deben tomar como ciertas todas las alegaciones fácticas plasmadas en la demanda*.[69] En ese sentido, están obligados a interpretar las aseveraciones de la parte demandante en forma conjunta, de la manera más favorable y liberal, formulando a su favor todas las inferencias que puedan asistirle.[70]

De esta forma, los tribunales deben razonar —*si a la luz de la situación más favorable al demandante y resolviendo las dudas a su favor*— la demanda es suficiente para constituir una reclamación válida.[71]

---

[66] Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V, R. 6.1(a). *Énfasis suplido.*
[67] 32 LPRA Ap. V, R. 10.2.
[68] *Id. Énfasis suplido.*
[69] *Colón v. Lotería,* 167 DPR 625, 649 (2006).; *Roldán v. Lutrón, SM, Inc.,* 151 DPR 883, 889 (2000). *Énfasis suplido.*
[70] *Colón v. Lotería, supra,* pág. 649.
[71] *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013). *Énfasis suplido.*

Conforme a lo antes dicho, la causa de acción no debe ser desestimada a menos que el promovente de la moción demuestre que el demandante no tiene derecho a *remedio alguno* al amparo de cualquier estado de hechos que puedan ser evidenciados en apoyo a su causa de acción.[72]

En consecuencia, la desestimación procede cuando existen circunstancias que permiten a los tribunales determinar —sin ambages— que la demanda *adolece de todo mérito o que la parte no tiene derecho a obtener remedio alguno.*[73] En ese sentido, es apropiado reiterar que nuestro Tribunal Supremo ha sostenido firmemente la clara política pública judicial de que los casos se ventilen en sus méritos.[74] Como corolario a esa política, se ha recalcado que existe un trascendental interés en que todo litigante tenga su día en corte.[75]

**D.**

Por otra parte, no debemos ignorar que el requisito de buena fe es exigencia general de nuestro derecho y que como tal se extiende a la totalidad de nuestro ordenamiento jurídico.[76] Cabe señalar que la buena fe tiene consigo un contenido ético que abarca toda la actividad jurídica.[77] De ella se originan las doctrinas de los: *actos propios*, **abuso del derecho** y *fraude a la ley*.[78]

Es por ello que, en nuestra jurisdicción rige el principio de que una parte debe ejercer sus derechos de conformidad con las exigencias del debido proceso de ley.[79] De lo contrario, nuestro ordenamiento sanciona *"el abuso del derecho o su ejercicio*

---

[72] *Colón v. Lotería, supra*, pág. 649. *Énfasis suplido.*
[73] *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013). *Énfasis suplido.*
[74] *Datiz v. Hospital Episcopal*, 163 DPR 10, 20 (2004).
[75] *Id.*
[76] *Velilla v. Pueblo Supermarkets, Inc.*, 111 DPR 585, 587–588 (1981).
[77] *Velilla v. Pueblo Supermarkets, Inc.*, *supra*, a la pág. 588.
[78] *Id.*
[79] *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 409 (2012). *Véase, además*; *Soriano Tavárez v. Rivera Anaya*, 108 DPR 663, 670 (1979); *El Vocero de PR v. Hernández Agosto*, 133 DPR 413, 415 (1993).

*antisocial".*[80] Nuestro Tribunal Supremo acogió la doctrina del derecho civil sobre el *abuso del derecho* en *Soriano Tavárez vs. Rivera Anaya,*[81] allí afirmó que;

> *[e]l abuso del derecho, la mala fe y el fraude a la ley ... persiguen ... impedir que el texto de la ley sea utilizado para amparar actos contrarios a la realización de la justicia; que frente al contenido ético y al espíritu objetivo de la norma legal no prevalezcan las maniobras tendentes a lograr un resultado distinto al perseguido con ella.*[82]

Según definido por nuestro Alto Foro, el *abuso del derecho* implica el ilegítimo ejercicio de un derecho *"cuando el titular excede manifiestamente los límites impuestos por la buena fe o por el fin social o económico de ese derecho".*[83]

Por lo cual, la doctrina de abuso del derecho ha sido reconocida como una fuente de responsabilidad.[84] Por lo que, se basa en el fundamental principio jurídico que exige que todo derecho o facultad que la ley establezca **debe siempre** exigirse de manera razonable, justa y legítima.[85]

Cabe mencionar que existen dos vertientes del abuso del derecho. La primera vertiente, de naturaleza subjetiva, ve el abuso del derecho en su ejercicio mismo, bien que fuere con la intención de dañar o sin verdadero interés por parte del promovente.[86] Por su parte, la segunda vertiente es de naturaleza objetiva, percibe el abuso en su ejercicio anormal, *"contrariando los fines económicos o sociales para los que fue creado".*[87]

A fin de cuentas, se trata de actos que, aunque se ajustan a la letra de la ley, producen efectos que son contrarios a su espíritu y finalidad.[88] Por esa razón, el Tribunal Supremo de P.R., nos recuerda que los jueces debemos rechazar aquellas pretensiones de

---

[80] *Soriano Tavárez v. Rivera Anaya, supra.*
[81] *Id.*
[82] *Soriano Tavárez v. Rivera Anaya, supra,* a las págs. 673 – 674.
[83] *Velilla v. Pueblo Supermarkets, Inc.,* 111 DPR 585, 588 (1981).
[84] *Producciones Tommy Muñiz v. COPAN,* 113 DPR 517, 528 (1982).
[85] *Soriano Tavárez v. Rivera Anaya, supra.*
[86] *Soriano Tavárez v. Rivera Anaya, supra,* a las págs. 670–671.
[87] *Id.*
[88] *Soriano Tavárez v. Rivera Anaya, supra.*

una parte que constituyen un medio para eludir la aplicación de las normas imperativas de nuestro ordenamiento.[89]

Es posible que, en apariencia, bajo la premisa de que se ejercita un derecho, realmente, en la práctica, se incurra en su abuso, porque el ejercicio anormal de ese derecho contraviene los fines económicos o sociales para los que se creó.[90] Quien manifiesta un abuso del derecho no está protegido jurídicamente.[91]

**E.**

Por último, los cánones del Código de Ética Profesional establecen las pautas mínimas que deben guiar a los miembros de la clase togada al ejercicio de su delicada faena.[92] Entre los asuntos que atiende el Código de Ética Profesional, se encuentre la solicitación. Como suele suceder, la relación abogado-cliente surge cuando un abogado acuerda proveer sus servicios profesionales a otra persona que los requiere a cambio de un precio u honorarios.[93] Es precisamente la contratación entre el abogado y su cliente lo que está atado a la prohibición a la solicitación. Esto debido a la noción de que los acuerdos contractuales deben ser fruto de la libre voluntad entre las partes.[94]

En nuestra jurisdicción, el Canon 34 reglamenta lo relativo a la solicitación e **instigación** o gestión de pleitos.[95] En específico, el referido canon versa de la siguiente manera:

> ### Canon 34.-Instigación o Gestión de Pleitos
>
> *Actúa contrario a los altos postulados de la profesión el abogado que, con propósito de lucro y sin ser requerido para que ofrezca su consejo o asesoramiento legal, aliente o estimule, en alguna forma, a clientes potenciales para que inicien reclamaciones judiciales o de cualquier otra índole. Es*

---

[89] *Id.,* a la pág. 671.

[90] *Véase*; J. Puig Brutau, *Fundamentos de Derecho Civil, Introducción al Derecho,* 2ª ed., Barcelona, Ed. Bosh, 1989, Tomo Preliminar, a las págs. 398–413.

[91] *Id.,* a la pág. 399. En referencia al artículo 2-2 del Código civil suizo de las obligaciones.

[92] *In re Gervitz Carbonell,* 162 DPR 665, 686 (2004). Véase, *In re Ortiz Brunet,* 152 DPR 542 (2000); *In re Filardi Guzmán,* 144 DPR 710 (1998).

[93] S. Steidel Figueroa, *Ética para Juristas: Ética del Abogado y Responsabilidad Disciplinaria,* 1ra ed., Puerto Rico, Ediciones SITUM, pág. 141.

[94] S. Steidel Figueroa, *Ética para Juristas, op. cit.,* pág. 141.

[95] *In re Franco Rivera,* 169 DPR 237, 270 (2006).

*también contrario a la sana práctica de la profesión el que un abogado, sin ser requerido, bien lo haga personalmente o a través de personas, investigue o rebusque defectos en títulos u otras posibles fuentes o causas de reclamaciones a los fines de beneficiarse en alguna forma mediante la prestación de sus servicios profesionales.*

***Empaña la integridad y el prestigio de la profesión y es altamente reprobable el que un abogado,*** ***actuando directamente*** *o a través de intermediarios o agentes,* ***haga gestiones para proporcionarse casos*** *o reclamaciones en que intervenir o para proporcionarlos a otros abogados.*[96]

Nuestro máximo foro ha expresado su repudio hacia los abogados que utilizan la solicitación personal para obtener clientes.[97]

Otra modalidad de la solicitación personal consiste en realizar acuerdos de colaboración con personas quienes, por el tipo de trabajo al que se dedican, pueden estar en contacto con potenciales clientes.[98] Este tipo de solicitación puede llevarla a cabo una tercera persona, quien a petición o anuencia del abogado gestiona los clientes potenciales.[99]

**-III-**

A todas luces el señor Betancourt Colón es un autodenominado *"tester"* que junto a su representación legal —Lcdo. José Carlos Vélez Colón— han entablado cientos de pleitos, so color de violación a los derechos del apelante por barreras arquitectónicas prohibidas en la Ley ADA. No obstante, notamos un patrón reprochable de lo que es un *modus operandi* que se asemeja a un claro abuso del derecho y contraviene el canon 34 de Ética Profesional de Abogados y Abogadas. Nos explicamos.

Primeramente, y a manera de un pequeño ejemplo, de la lista de los ciento uno (101) casos en los que el apelante es demandante, vemos que diecinueve (19) fueron **desistidos y desestimados con perjuicio por acuerdo transaccional**, en los cuales, solo uno se

---

[96] 4 LPRA Ap. IX, C. 34. (Énfasis suplido)
[97] Véase, *In re Valentín,* 115 DPR 68 (1968).
[98] S. Steidel Figueroa, *Ética para Juristas, op. cit.*, pág. 148.
[99] S. Steidel Figueroa, *Ética para Juristas, op. cit.*, pág. 149.

constata que hubo una compensación de $7,000.00; sin embargo, en otros casos se hizo un acuerdo **confidencial** que no permite revelar la cuantía ni los términos pactados. En los restantes casos, simplemente no se dice más. Veamos:

1. *Faustino Betancourt Colón v. Rc Air-Conditioned Services Corp*, SJ2019CV07518. Presentación: 25 de julio de 2019/Terminación: 3 de septiembre de 2020. **SOBRE:** DAÑOS Y PERJUICIOS. **Demandante desistió con perjuicio por Acuerdo Transaccional (\$7,000.00)**.
2. *Faustino Betancourt Colón v. Héctor Sullivan, Inc.*, SJ2020CV04566. Presentación: 26 de agosto de 2020/Terminación: 16 de septiembre de 2021. **SOBRE:** PETICION DE ORDEN. El demandante **desistió con perjuicio**, **por Acuerdo Transaccional CONFIDENCIAL**.
3. *Faustino Betancourt Colón v. A&M Contract, Inc.*, SJ2020CV06550. Presentación: 4 de diciembre de 2020/Terminación: 4 de abril de 2022. **SOBRE:** DAÑOS Y PERJUICIOS. **Demandante desistió con perjuicio por Acuerdo Transaccional**.
4. *Faustino Betancourt Colón v. University of Puerto Rico Parking System, Inc.*, SJ2020CV06851. Presentación: 16 de diciembre de 2020/Terminación: 9 de junio de 2022. **SOBRE:** DAÑOS; PETICIÓN DE ORDEN. Por desistimiento voluntario se **desestima con perjuicio por *Estipulación Sobre Transacción* CONFIDENCIAL**.
5. *Faustino Betancourt Colón v. Presbyterial Community Hospital, Inc.*, SJ2021CV02680. Presentación: 3 de mayo de 2021/Terminación: 28 de agosto de 2023. **SOBRE:** PETICIÓN DE ORDEN. **Desistimiento con perjuicio por Acuerdo Transaccional CONFIDENCIAL**.
6. *Faustino Betancourt Colón v. Three n One Corporation*, CA2021CV01055. Presentación: 3 de mayo de 2021 / Terminación: 27 de enero de 2022. **SOBRE:** PETICIÓN DE ORDEN. **Se desestima por desistimiento con perjuicio por Acuerdo Transaccional CONFIDENCIAL**.
7. *Faustino Betancourt Colón v. Wendco of Puerto Rico, Inc.*, CG2021CV01081. Presentación: 5 de mayo de 2021/Terminación: 22 de febrero de 2022. **SOBRE:** DAÑOS; PETICIÓN DE ORDEN. **Desistimiento con perjuicio por Acuerdo Transaccional CONFIDENCIAL.**
8. *Faustino Betancourt Colón v. Subs Island Development Inc.*, SJ2021CV02894. Presentación: 13 de mayo de 2021/Terminación: 6 de agosto de 2021. **El TPI dictó *Sentencia* a favor de Subway y en contra del señor Betancourt, desestimando con perjuicio la Demanda**. Se condena al señor Betancourt al pago de las costas a favor de Subway. Sin embargo, ante la presentación del recurso KLAN202100706, las partes llegaron a un **Acuerdo Transaccional**, por lo que se **desestimó con perjuicio**.
9. *Faustino Betancourt Colón v. First Bank Puerto Rico*, SJ2021CV07433. **SOBRE:** PETICIÓN DE ORDEN. Presentación: 10 de noviembre de 2021/Terminación: 6 de septiembre de 2022. **Se desestima por desistimiento voluntario con perjuicio por Acuerdo Transaccional**.
10. *Faustino Betancourt Colón v. Cortés Hermanos*, SJ2021CV08014. Presentación: 6 de diciembre de 2021/Terminación: 28 de mayo de 2022. **SOBRE:** DAÑOS; PETICIÓN DE ORDEN. **Por desistimiento voluntario se desestima con perjuicio por Acuerdo Transaccional**.
11. *Faustino Betancourt Colón v. Vaquería Tres Monjitas Inc.*, SJ2021CV08603. Presentación: 31 de diciembre de 2021/Terminación: 10 de marzo de 2022. **SOBRE:** PETICION DE ORDEN. **Se desestima por desistimiento con perjuicio, por haber llegado a un Acuerdo Transaccional CONFIDENCIAL**.
12. *Faustino Betancourt Colón v. Autoshow LLC*, SJ2022CV00784. Presentación: 4 de febrero de 2022/Terminación:

21 de septiembre de 2022. **SOBRE:** PETICION DE ORDEN. **Por desistimiento voluntario se desestima con perjuicio por Acuerdo Transaccional**.

13.      *Faustino Betancourt Colón v. Office Max Puerto Rico*, BY2022CV02237. Presentación: 1 de mayo de 2022/Terminación: 18 de diciembre de 2023. **SOBRE:** Petición de Orden. **Por desistimiento voluntario se desestima con perjuicio por Acuerdo Transaccional**.

14.      *Faustino Betancourt Colón v. Municipio de Cidra*, CG2022CV01657. Presentación: 20 de mayo de 2022/Terminación: 12 de febrero de 2024. **SOBRE:** PETICIÓN DE ORDEN. **Por estipulación se desiste y desestima con perjuicio por Estipulación.**

15.      *Faustino Betancourt Colón v. HMH Real Estate Inc.*, AR2021CV00576. Presentación: 6 de junio de 2022/Terminación: 6 de octubre de 2023. **SOBRE:** PETICIÓN DE ORDEN. **Acuerdo PRIVADO Y CONFIDENCIAL se desiste y desestima con perjuicio.**

16.      *Faustino Betancourt Colón v. Columbia College Corporation*, CG2022CV02001. Presentación: 17 de junio de 2022/Terminación: 13 de octubre de 2022. **SOBRE:** PETICIÓN DE ORDEN. **Por desistimiento voluntario se desestima con perjuicio por Acuerdo Transaccional**.

17.      *Faustino Betancourt Colón v. Hacienda La Tormenta*, HU2022CV01242. Presentación: 6 de septiembre de 2022/Terminación: 29 de diciembre de 2023. **SOBRE:** PETICIÓN DE ORDEN. **Por desistimiento voluntario se desestima con perjuicio por Acuerdo Transaccional**.

18.      *Faustino Xavier Betancourt v. Jbao Investments, Corp.*, CG2023CV01534. Presentación: 15 de mayo de 2023 / Terminación: 26 de marzo de 2024. **SOBRE:** PETICIÓN DE ORDEN. MINUTA: *"La licenciada Rodríguez anuncia que presentará moción dispositiva. Informa que su representado ya comenzó las mejoras que se establecen en el informe pericial, por lo que necesita término para que se trabaje en esas modificaciones."* **Por desistimiento voluntario se desestima con perjuicio, al llegar a un Acuerdo CONFIDENCIAL**.

19.      *Faustino Xavier Betancourt v. Restaurante El Obrero, Inc.*, SJ2023CV08664. Presentación: 13 de septiembre de 2023/Terminación: 1 de abril de 2024. **SOBRE:** PETICIÓN DE ORDEN. Cuando las partes se encontraban en el descubrimiento de prueba, comenzaron conversaciones transaccionales. **Se desestima por desistimiento voluntario con perjuicio por Acuerdo Transaccional**.

Además de los diecinueve **(19)** casos **transados**, el señor Betancourt Colón **desistió** y fueron **desestimados con perjuicio o sin perjuicio** trece **(13)** pleitos de los **101** casos examinados. Estos son:

1. *Faustino Betancourt Colón v. Wal-Mart Puerto Rico, Inc.*, SJ2020CV04245. Presentación: 13 de agosto de 2020/Terminación: 31 de marzo de 2021. SOBRE: INTERDICTO ESTATUTARIO 42 U.S.C. § 12188. El TPI dictó **Sentencia de desistimiento voluntario con perjuicio** sin especial imposición de las costas, gastos ni honorarios de abogados.

2. *Faustino Betancourt Colón v. Autoridad de Carreteras*, FA2021CV00304. Presentación: 27 de abril de 2021/Terminación: 20 de mayo de 2021. SOBRE: DAÑOS. **Demandante desistió sin perjuicio**.

3. *Faustino Betancourt Colón v. Walgreens of Puerto Rico, Inc.*, HU2021CV00473. Presentación: 19 de mayo de 2021 / Terminación: 21 de octubre de 2021. **SOBRE:** DAÑOS; PETICIÓN DE ORDEN. **Por desistimiento se desestima con perjuicio**.

4. *Faustino Betancourt Colón v. Restaurants Operators Inc.*, SJ2021CV02512. **SOBRE:** PETICIÓN DE ORDEN. Presentación: 26 de abril de 2021/Terminación: 3 de febrero de 2022. **Desistimiento con perjuicio**.

5. *Faustino Betancourt Colón v. Purico LLC*, SJ2020CV04627. Presentación: 21 de abril de 2021 / Terminación: 22 de febrero de 2022. **SOBRE:** INTERDICTO ESTATUTARIO 42 U.S.C. § 12188. **Desistimiento voluntario con perjuicio**.

6. *Faustino Betancourt Colón v. Industria Lechera de PR*, SJ2021CV08286. Presentación: 17 de diciembre de 2021 / Terminación: 24 de marzo de 2022. SOBRE: PETICIÓN DE ORDEN. **Se desestima por desistimiento voluntario con perjuicio**.

7. *Faustino Xavier Betancourt Colón v. Nave, Inc. y otros*, CG2022CV04308. Presentación: 31 de diciembre de 2022/ Terminación: 6 de marzo de 2023. SOBRE: PETICIÓN DE ORDEN. **Desistimiento con perjuicio**.

8. *Faustino Xavier Betancourt v. Encanto Restaurants, Inc.*, CA2023CV00646. Presentación: 3 de marzo de 2023 / Terminación: 23 de marzo de 2023. SOBRE: PETICIÓN DE ORDEN. **Desistimiento con perjuicio solicitado por el demandante**.

9. *Faustino Xavier Betancourt v. Yue Niu Feng*, LP2023CV00058. Presentación: 29 de marzo de 2023/Terminación: 11 de octubre de 2023. SOBRE: PETICIÓN DE ORDEN. **Desistimiento con perjuicio solicitado por el demandante**.

10. *Faustino Betancourt Colón v. BV Properties*, CG2021CV01042. Presentación: 3 de mayo de 2021/Terminación: 1 de noviembre de 2023. SOBRE: PETICIÓN DE ORDEN. **El TPI desestimó sin perjuicio tras la incomparecencia del demandante en más de 30 días**.

11. *Faustino Xavier Betancourt v. Coca Cola Music Hall*, SJ2023CV01961. Presentación: 2 de marzo de 2023 / Terminación: 30 de junio de 2023. SOBRE: PETICIÓN DE ORDEN. **Desistimiento sin perjuicio solicitado por el demandante**.

12. *Faustino Xavier Betancourt Colón v. Panadería Barcelona Inc. y otros*, BY2022CV06132. Presentación: 1 de diciembre de 2022/Terminación: 30 de octubre de 2023. SOBRE: PETICIÓN DE ORDEN. **Desistimiento con perjuicio**.

13. *Faustino Betancourt Colón v. Hospital Regional de Bayamón*, BY2022CV02238. Presentación: 1 de mayo de 2022/Terminación: 15 de abril de 2024. SOBRE: PETICIÓN DE ORDEN. El demandante informó al TPI que las partes acordaron mutuamente el **desistimiento del caso con perjuicio**.

Además de los casos **transados y desistidos** por el apelante, notamos que dieciséis **(16)** casos fueron **desestimados**:

1. *Faustino Betancourt Colón v. Imperial Realty Enterprises, Inc.*, SJ2020CV05829. Presentación: 28 de octubre de 2020 / Terminación: 28 de abril de 2022. **SOBRE:** PETICIÓN DE ORDEN. Mediante *Sentencia* del 28 de abril de 2022, el TPI declaró **HA LUGAR** la *Solicitud de Sentencia Sumaria Enmendada* presentada *por Imperial Realty Enterprises, Inc.*, por lo que **desestimó** la Petición de Interdicto Preliminar de Betancourt Colón.

2. *Faustino Betancourt Colón v. Pizza City Inc.*, CA2021CV00983. Presentación: 26 de abril de 2021/Terminación: 26 de diciembre de 2023. **SOBRE:** INJUNCTION - LEY ADA. El TPI **desestimó el pleito por falta de parte indispensable**. En lo pertinente, expresó: *En el presente caso es innegable que hace falta una parte indispensable. Pizza City, Inc., no es el dueño del inmueble, ni tampoco Faustino X. Betancourt Colón trajo como demandado al Municipio de Autónomo de Carolina, quien es la entidad responsable de las aceras.*

3. *Faustino Betancourt Colón v. Municipio de Cataño*, BY2021CV01594. Presentación: 27 de abril de 2021/Terminación: 28 de marzo de 2023. SOBRE: DAÑOS; PETICIÓN DE ORDEN. **Desestimación sin perjuicio**.

4. *Faustino Xavier Betancourt Colón v. Prosperidad LLC y otros*, CA2022CV04075. Presentación: 21 de diciembre de 2022/Terminación: 6 de febrero de 2024. **SOBRE:** PETICIÓN DE ORDEN. El TPI **desestimó por falta una parte indispensable**. Concluyó el foro primario que; *[e]l arrendador y titular de la propiedad objeto de la presente demanda es una parte indispensable.*

5. *Faustino Betancourt Colón v. Plaza Cupey Garden*, SJ2021CV07284. Presentación: 4 de noviembre de 2021/Terminación: 12 de abril de 2022. Este caso fue **desestimado**.

6. *Faustino Betancourt Colón v. Ralph's Food Warehouse*, HU2021CV00372. Presentación: 20 de abril de 2021/Terminación: 17 de noviembre de 2023. **SOBRE:** PETICIÓN DE ORDEN. El TPI declaró que el señor Betancourt Colón **no tiene legitimación activa**, por lo que ordenó la **desestimación y archivo** de la causa de acción. En lo pertinente, expresó: *Según el derecho anteriormente expuesto, y los escritos y alegaciones de las partes, no le asiste la razón al demandante en su alusión a la doctrina de "tester standing" para justificar su reclamación contra el supermercado Ralph's. Coincidimos con la parte demandada en cuando a la suficiencia de la misma para presentar una reclamación justiciable. Así, para incoar una reclamación, es necesario que la parte demandante cumpla con los requisitos de legitimación activa y el mero estatus de "tester" no confiere tal legitimación. […]. En el caso de autos, no cabe duda, pues, que el demandante no ha presentado alegaciones y prueba demostrativa de cada uno de los elementos que sustentan su legitimación, incluyendo el discrimen al amparo del Título III y el haber sufrido un daño real, claro, palpable e inmediato, no abstracto o hipotético. Según reconocido por la Corte Suprema de los Estados Unidos: "The deprivation of a right created by statute must be accompanied by some concrete interest that is affected by the deprivation, in order to satisfy the injury-in-fact requirement for Article III standing". TransUnion LLC v. Ramírez, 141 S.Ct. 2190 (2021).*

7. *Faustino Betancourt Colón v. Municipio de Guaynabo*, BY2021CV01590 Presentación: 27 de abril de 2021/Terminación: 2 de febrero de 2023. *SOBRE:* DAÑOS/PETICIÓN DE ORDEN. El TPI declaró que el señor Betancourt Colón **no tiene legitimación activa**, por lo que desestimó el pleito a tenor con la Regla 10.2 de Procedimiento Civil de Puerto Rico.

8. *Faustino Betancourt Colón v. Municipio de Toa Alta,* BY2021CV01593. El TPI **desestimó** la demanda, ya que las alegaciones no planteaban hechos suficientemente específicos y expresados de manera clara y concluyente que justifiquen la concesión de un remedio. Además, expresó: *[L]a demanda no*

*contiene una alegación que señale con especificidad una estructura que sea propiedad del Municipio, de manera que le permita a éste levantar aquellas defensas que correspondan. […].*

9. *Faustino Betancourt Colón v. Municipio de Carolina*, CA2021CV00992. Presentación: 27 de abril de 2021/Terminación: 28 de junio de 2022. **SOBRE:** PETICIÓN DE ORDEN, DAÑOS. El TPI desestimó la Demanda, y acogió los planteamientos de la demandada sobre que el demandante **carece de legitimación activa para incoar la acción**.

10. *Faustino Betancourt Colón v. Universidad de Puerto Rico*, SJ2021CV02732. Presentación: 4 de mayo de 2021/Terminación: 19 de enero de 2023. **SOBRE:** PETICIÓN DE ORDEN DE INTERDICTO PERMANENTE; DAÑOS. El TPI desestimó la demanda. En lo pertinente, expresó: *[E]l tribunal concluye que Faustino Betancourt no ha sufrido un discrimen o rechazo por razón de su discapacidad en las facilidades de la UPR-RP cuando acudió a utilizar un baño, por lo cual no se configuran los requisitos para instar la causa de acción de discrimen al amparo del Título II de la Ley ADA, supra, y el Rehabilitation Act, supra. Según la prueba presentada, las presuntas barreras arquitectónicas no interfirieron con el peticionario en la búsqueda de algún servicio o beneficio ofrecido por la UPR.*

11. *Faustino Betancourt Colón v. Zulyer Pharmacy, Inc.*, HU2021CV00485. Presentación: 20 de mayo de 2021/Terminación: 27 de enero de 2023. **SOBRE:** PETICIÓN DE ORDEN. El TPI acogió la solicitud de sentencia sumaria presentada por la demandada, y **desestimó** la causa de acción.

12. *Faustino Betancourt Colón v. Capri SE*, CA2022CV01089. Presentación: 7 de abril de 2022/Terminación: 13 de diciembre de 2023. **SOBRE:** PETICIÓN DE ORDEN; DAÑOS. El TPI **desestimó** la demanda. En lo pertinente, expresó: *Aun tomando como ciertos todos los hechos debidamente expuestos en la demanda e interpretándolos de la manera más liberalmente posible a favor del demandante, no podemos deducir que el demandante haya presentado una reclamación que justifique la concesión de un remedio.*

13. *Faustino Betancourt Colón v. Restaurante Cambalache*, BY2022CV02530. Presentación: 16 de mayo de 2022/Terminación: 20 de septiembre de 2022. **SOBRE:** Petición de Orden. **Desestimación con perjurio** solicitada por la demandada.

14. *Faustino Betancourt Colón v. Montehiedra Holding LLC*, SJ2022CV04252. Presentación: 13 de octubre de 2022/Terminación: 14 de abril de 2023. **SOBRE:** PETICIÓN DE ORDEN. El TPI **archivo con perjuicio** la acción contra *INTERNACIONAL RESTAURANT SERVICES, INC.* No obstante, sobre la reclamación contra *UE Montehiedra* dispuso que la demanda no justifica un remedio, por lo que se **desestima**.

15. *Faustino Xavier Betancourt v. Hilaserra Inc.*, LP2023CV00059. Presentación: 29 de marzo de 2023/Terminación: 14 de noviembre de 2023. **SOBRE:** PETICIÓN DE ORDEN. El TPI acogió la solicitud de **desestimación** presentada por la demandada.

16. *Faustino Betancourt Colón v. Tidel Realty, Corp.*, CA2022CV01411. Presentación: 24 de marzo de 2023/Terminación: 22 de febrero de 2024. **SOBRE:** PETICIÓN DE ORDEN. El TPI determinó que el demandante **no tiene legitimación activa**, por lo que el Tribunal **desestimó** la demanda **con perjuicio** y expresó: *"Según ha quedado establecido por la jurisprudencia local y federal toda parte que desee incoar una*

*reclamación tiene que cumplir con los requisitos de legitimación activa y el mero estatus de tester no confiere legitimación activa."*

Al examinar las demandas presentadas por el señor Betancourt Colón,[100] salta a la vista que en su *"autodenominada capacidad de tester"* presenta un patrón que se distingue por el uso de las mismas alegaciones sobre que: **(1)** cumple con los requisitos de legitimación activa para incoar su demanda por su discapacidad física; **(2)** tiene conocimiento de las barreras arquitectónicas, ya que las presenció y por ello, se ve desalentado para ocasiones futuras de visitar el establecimiento; y, **(3)** que estas barreras le han proporcionado un daño a su persona. Sin embargo, un examen de esas alegaciones demuestran que el apelante no ha sufrido un daño real que le brinde la legitimación activa necesaria para instar una causa de acción.

A manera de ilustración, vamos a exponer solo tres (3) casos, de los antes reseñados, que a nuestro juicio ejemplifican el *modus operandi* y la falta de legitimación activa del señor Betancourt Colón.

El primero es el caso: <u>*Faustino Xavier Betancourt v. Hilaserra Inc.*</u>, Caso Núm. LP2023CV00059. El TPI acogió la solicitud de **desestimación** presentada por la demandada y el 14 de noviembre de 2023, emitió una Sentencia que, en lo pertinente, expreso:

> *[L]a cuestión principal que debemos atender es si el demandado Hilaserra, Inc. ("Marco's Pizza"), incumplió con las disposiciones del Título III de la Ley ADA y sus guías de diseño accesible al no remover una serie de barreras arquitectónicas en el inmueble que impidieron el uso y disfrute de sus facilidades por el demandante. **Es menester señalar que el esquema de un caso prima facie al amparo del Título III de la Ley ADA requiere que el demandante pruebe que: 1) es una persona con una discapacidad cualificada, 2) que el demandado opera un lugar de acomodo público; y 3) que fue discriminado como resultado de su discapacidad.***
> *En el presente caso no hay controversia que el demandante cumple con el primer requisito de tener una discapacidad física. El demandado no cuestiona este elemento, ni ofrece prueba para refutarlo. Entendemos por tanto que se cumple con el primer requisito. El segundo*

---

[100] Además, debemos destacar que **24** de los 101 casos examinados fueron trasladados al Tribunal de Distrito Federal de P.R. Ante los casos transados, desistidos, desestimados y traslados, de los 101 casos reseñados, solo hay **21** casos activos en el TPI.

elemento de un caso prima facie de discrimen es aquel sobre ser un lugar de acomodo público. Sobre ello, tampoco hay controversia que el restaurante Marco's Pizza es un lugar de acomodo público según definido por la Ley ADA. 42 U.S.C. sec. 12181(7). El demandado no ofrece prueba para refutar que es un lugar de acomodo público. Por lo que, este elemento también se cumple.

Ahora bien, en cuanto al tercer elemento que es aquel sobre el demandante sufrir un discrimen motivado por su discapacidad procedemos a analizarlo. **Con relación a la discriminación, el demandante alegó que sufrió discriminación por motivo de que la demandada tiene una serie de barreras las cuales impedían su uso y que estas deben ser removidas para que el local en cuestión estuviera en cumplimiento con las disposiciones de la Ley ADA. Es decir, la posición del Sr. Betancourt Colón es que sufrió un daño concreto en calidad de "tester". En cambio, la parte demandada argumenta que, no se ha demostrado un daño específico por el cual se pueda resarcir.**

La parte demandante alega que, el 10 de noviembre de 2022, visitó las facilidades de Marco's Pizza, localizado en Plaza Las Piedras Shopping Center, el cual es un lugar de acomodo público, según la Ley ADA. Aduce que, el propósito de la visita a la propiedad fue el de comprar los diferentes productos alimenticios que son ofrecidos allí, mientras pasaba su estancia en el municipio de Las Piedras. Arguyó que, durante su visita, encontró barreras arquitectónicas en el interior del restaurante **(los mostradores o "counters" altos y en el baño del establecimiento).** Afirmó que, dichas barreras que limitaron su capacidad de usar los bienes y privilegios ofrecidos en la propiedad, por lo anterior, el señor Faustino Betancourt actualmente se ha sentido disuadido (deterred) de regresar pues tiene conocimiento de las barreras existentes en la propiedad, que limitan el acceso pleno e igualitario a los servicios ofrecidos.

En relación con el interior de la propiedad expresa que los mostradores o "counters", son muy altos para atender a personas que utilizan un scooter o una silla de ruedas. En cuanto al baño, mencionó que la parte inferior del lavamanos no está diseñada para evitar el contacto con los objetos que se encuentran debajo, lo que significa que las tuberías expuestas dificultan un acceso frontal cómodo y seguro para personas en silla de ruedas u otros dispositivos de movilidad. Indicó que el dispensador de papel higiénico se encuentra lejos y ubicado de manera baja del inodoro y el baño tiene barras de agarre que no cumplen con las disposiciones de la Ley ADA. Asimismo, alegó que la perilla de la puerta no es accesible. **Invocó legitimación como "tester", y manifestó su intención de regresar en los próximos meses a Marco's Pizza, con el propósito de verificar personalmente la eliminación de las barreras arquitectónicas antes descritas, pues en su calidad de "tester" tiene interés en que el establecimiento sea accesible e inclusivo. Tras evaluar las alegaciones que preceden, nos resulta forzoso concluir que Sr. Betancourt Colón no tendría un remedio en ley, por lo que la desestimación del pleito es procedente en derecho.**

Según el derecho anteriormente expuesto, para establecer un caso prima facie de discrimen bajo el Título III de la Ley ADA, el demandante tiene que haber sido discriminado por su discapacidad. **De la demanda no surge que el demandante haya sufrido un daño**

*particular o concreto que le otorgue legitimación activa para reclamar bajo las disposiciones de la Ley ADA. Sino que, más bien, su alegada legitimación surge como "tester". No obstante, lo anterior, en la jurisdicción federal ya se ha reiterado que el simple hecho de ser "tester" no confiere legitimación activa al demandante si éste no cumple con los requisitos necesarios para ello.*

*Es menester señalar que, el hecho de ser un consumidor bona fide tampoco otorga de por sí legitimación activa al demandante, si dicho consumidor no prueba la concurrencia de los elementos necesarios para tener standing. Corresponde al demandante alegar con claridad aquellos hechos que demuestren cada uno de los elementos que sustentan su legitimación, incluyendo el haber sufrido un daño real, claro, palpable e inmediato, no abstracto o hipotético.*

*En el caso de autos el demandante no logró demostrar su caso prima facie de discrimen al amparo del Título III. El demandante no ha establecido con prueba fehaciente que ha sufrido daño alguno, ni mucho menos que la demandada haya discriminado en su contra por no cumplir con los estándares de diseño aplicables. En cuanto al interior de la propiedad, la parte demandante no alega haber sufrido daño alguno, **sino de haber visualizado ciertos incumplimientos con la ley federal**. Como ya expresamos, un demandante ileso que solo procura que el demandado cumpla con la ley no satisface los criterios necesarios para tener legitimación activa, pues no puede probar un daño concreto. El hecho de que el Congreso y/o nuestra Asamblea Legislativa identifiquen un daño intangible, y decidan concretizarlo mediante un estatuto que garantice al perjudicado un derecho a reclamar, no implica que el demandante, de forma automática, satisface el requisito de daño requerido para ostentar legitimación activa. En el contexto de una violación estatutaria se requiere la existencia de un daño concreto. Véase de manera persuasiva, Faustino Betancourt v. AAA Car Rental Inc. y otros, KLAN202300477.*

*Por ende, el Sr. Betancourt Colón no puede tener **standing por un encuentro o reconocimiento de una barrera arquitectónica, pues, aunque el demandado pueda estar en violación a la ley federal, si no recibió un daño concreto y particular a consecuencia de dicha barrera, está impedido de reclamar.** Así lo ha reconocido la Corte Suprema de los Estados Unidos. "The deprivation of a right created by statute must be accompanied by some concrete interest that is affected by the deprivation, in order to satisfy the injury in-fact requirement for Article III standing". TransUnion LLC v. Ramírez, 141 S.Ct. 2190 (2021). Véase de manera persuasiva, Faustino Betancourt v. AAA Car Rental Inc. y otros, KLAN202300477.*

El segundo caso: <u>*Faustino Betancourt Colón v. Restaurante Cambalache*</u>, Caso Núm. BY2022CV02530. El 20 de septiembre de 2022, el TPI concedió una desestimación con perjuicio solicitada por la demandada. En lo pertinente, expresó que:

*[B]etancourt identifica dieciséis (16) alegadas barreras atribuibles a Caminito SUMAC Núm. 1, ¶ 18. Y con relación a qué reglamentación aplica, Betancourt nos refiere a los estándares de diseño de la ADA (los "Estándares").*

*SUMAC Núm. 1, ¶ 18.  Habiendo revisado detenidamente dichos Estándares, concluimos que Betancourt no alegó un incumplimiento legal según lo requiere la jurisprudencia y, en casos, expone alegaciones que de ninguna manera están apoyadas por los Estándares.*

*Primero, Betancourt alega que "los baños que no son accesibles carecen de la rotulación que exige la reglamentación aplicable." SUMAC Núm. 1, ¶ 18, inciso (a). Sin embargo, como bien señala Caminito, Betancourt no explica qué rotulación es la que exige la reglamentación aplicable, ni expone cómo esto le ha causado un daño.*

*Segundo, Betancourt alega que "no hay una ruta de acceso hacia un baño accesible." SUMAC Núm. 1, ¶ 18, inciso (b). Sin embargo, Betancourt se limita vagamente a exponer que no existe ruta de acceso hacia un baño accesible, sin especificar su razonamiento para alegar lo mismo.*

*En cuanto al lavamanos, Betancourt alega que "la parte de abajo del lavamanos no está configurada para evitar el contacto con los objetos que están debajo del lavamanos", y que "el grifo no tiene una configuración que permite su operación sin tener que apretar fuerte, torcer o girar la muñera." SUMAC Núm. 1, ¶ 18, incisos (f) y (g). **Sin embargo, Betancourt incumple con exponer de manera específica cómo estas alegadas "barreras" le causaron daño alguno**.*

***En cuanto a todas las otras "barreras", el Betancourt se limita a indicar que las mismas son "inconsistentes con la reglamentación aplicable", sin explicar en qué consisten las "barreras", el requisito reglamentario, ni como las mismas incumplen con los requisitos reglamentarios. Betancourt tampoco indica ni alega cómo y por qué las alegadas "barreras" le ocasionaron daño alguno. Por tanto, el Demandante no ha alegado existencia de una barrera con ninguna de estas aserciones**.*

*Claramente, Betancourt no ha satisfecho el estándar de Twombly-Iqbal y, por ende Betancourt carece legitimación activa alguna, y este Honorable Tribunal debe descartar toda alegación al respecto. Consecuentemente, Betancourt no expuso una reclamación que justifique la concesión de un remedio, toda vez que de ninguna manera alega concretamente que Caminito haya incurrido en conducta ilícita.*

El tercer caso: <u>*Faustino Betancourt Colón v. Municipio de Carolina*</u>, Caso Núm. CA2021CV00992. El 28 de junio de 2022, el TPI emitió una Sentencia en la que desestimó la Demanda, y acogió los planteamientos de la demandada sobre la **carecencia de legitimación activa** del apelante para incoar la acción. Señaló, además, que la demanda no cuenta con hechos bien alegados, por lo que deja de exponer una reclamación que justifique la concesión de un remedio. Dicha determinación, fue confirmada en el Tribunal de Apelaciones en el caso **KLAN202200617**, mediante *Sentencia* del 30 de septiembre de 2022, en la cual, confirmó al TPI e impuso

honorarios de abogados en quinientos dólares ($500), al apelante,

pagaderos a la parte apelada por poner en marcha la maquinaria

judicial en busca de un remedio cuando no existe tal daño. En lo

pertinente, este Tribunal Apelativo expresó:

> *El señor Betancourt Colón expone ante este tribunal que: (1) cumple con los requisitos de legitimación activa para incoar su demanda: (2) tiene conocimiento de las barreras, ya que las presenció y por ello, se ve desalentado de visitar el Municipio de Carolina; y (3) que estas barreras le han proporcionado un daño por décadas a su persona. Sin embargo, un examen del expediente ante nuestra consideración nos lleva a concluir que no le asiste la razón, **pues no ha sufrido un daño real que le brinde la legitimación activa necesaria para instar una causa de acción. En cambio, este es un caso típico de "Drive-by/Google lawsuit", mediante el cual el Apelante funge como "tester" bajo la Ley ADA.** Veamos.*
>
> *De la deposición tomada por el Municipio al señor Betancourt Colón el 4 de marzo de 2022, **surge que este último admitió que las fotos anejadas a su Demanda para demostrar las alegadas violaciones a la Ley ADA fueron descargadas de la plataforma Google Earth. El Apelante indicó que transitaba en su automóvil por los lugares señalados, anotaba las ubicaciones en donde observaba una violación a la ley y le proporcionaba la información a su abogado para que este las incluyera en la reclamación.** De igual forma, con respecto a la única alegación de daños hecha en la Demanda, alegadamente ocurrida el 4 de marzo de 2021, **el Apelante no logró precisar, ante preguntas de la abogada del Municipio, los detalles ni el lugar en donde se configuraron los hechos que motivaron la situación**. Igualmente, el Apelante **expresó no contar con evidencia para sustentar su reclamo sobre el supuesto incumplimiento intencional del Municipio con sus responsabilidades bajo la Ley ADA**. A tales efectos, en la deposición tomada por el Municipio, el señor Betancourt Colón expuso que solicitaría la prueba posteriormente a la parte contraria para demostrar ese asunto. De lo anterior, es patente que el Apelante nunca ha sufrido un daño real, inmediato y preciso, por lo cual no se configuran los requisitos para que goce de legitimación activa en el caso de autos. Su conocimiento sobre las barreras arquitectónicas alegadas en su reclamación se limita a lo que pudo apreciar desde su automóvil. Si bien el Apelante argumenta haber sufrido un daño por tiempo considerable, no expone cuales han sido los eventos causantes del mismo con detalle y precisión. Por el contrario, de manera generalizada y estereotipada, expone en la Demanda que ha enfrentado múltiples barreras arquitectónicas, sin hacer alusión a situación alguna que le haya ocurrido personalmente y que, a su vez, evidencie la falta de accesibilidad en los espacios públicos municipales.[101]*

---

[101] Véanse, las págs. 11 y 12 de la Sentencia KLAN202200616, honorable Salgado Schwarz, juez ponente.

Los casos antes expuestos, —y el de epígrafe— constituyen un reiterado patrón de **abuso del derecho**, en el cual, <u>el señor Betancourt Colón ha excedido manifiestamente los límites impuestos por la buena fe, contrariando los fines sociales de la Ley ADA, para la cual fue creada</u>. Estamos ante una serie de reclamaciones incoadas por el apelante, que en apariencia, parecería que se está ejerciendo un derecho bajo la Ley ADA, pero en la práctica, está incurriendo en un claro abuso del derecho, porque al ejercitarlo, en la inmensa mayoría de los pleitos, no ha sufrido ningún daño concreto, en otros ha optado por acuerdos transaccionales confidenciales, o desistimiento voluntario o por estipulación.

Reiteramos, que las reclamaciones presentadas por el señor Betancourt Colón, en su calidad de *"tester"*, constituyen en la práctica, una contravención de los fines económicos o sociales para los que se creó la Ley ADA. En ese sentido, quien manifiesta un abuso del derecho no está protegido jurídicamente. Razón por la cual, los jueces debemos rechazar estas pretensiones del señor Betancourt Colón, que so color de ser un *"tester"*, constituyen un medio para eludir la aplicación de las normas imperativas de nuestro ordenamiento.[102]

Todavía más, este abuso del derecho es estimulado por el representante legal del apelante —licenciado José Carlos Vélez Colón—, quien ha presentado estos pleitos uno tras otros, alejándose de los postulados éticos de la profesión el abogado. En específico, ha presentado casos de *"Drive-by/Google lawsuit"*, mediante el cual el apelante funge como *"tester"* bajo la Ley ADA, y recopila información que luego se la provee al licenciado Vélez Colón:

> *De la deposición tomada por el Municipio al señor Betancourt Colón el 4 de marzo de 2022, **surge que este último admitió que las fotos anejadas a su Demanda***

---

[102] *Soriano Tavárez v. Rivera Anaya, supra,* a la pág. 671.

> *para demostrar las alegadas violaciones a la Ley ADA fueron descargadas de la plataforma Google Earth. El Apelante indicó que transitaba en su automóvil por los lugares señalados, anotaba las ubicaciones en donde observaba una violación a la ley y le proporcionaba la información a su abogado para que este las incluyera en la reclamación.*[103]

Incluso, ha instado demandas, en las cuales el señor Betancourt Colón alega haber verificado páginas web de *Facebook, Discover Puerto Rico* y *Tripadvisor*, para entonces visitar el establecimiento que eventualmente va a demandar:

> *13. Como resultado de la información revisada previo a la visita por parte del señor Betancourt Colon, en la página web del restaurante, Facebook, Discover Puerto Rico y Tripadvisor, en las cuales se evidencian las instalaciones interiores del restaurante, además de las áreas que visitó el señor Betancourt Colon en la propiedad en cuestión*[.] <u>*Betancourt Colón v. SCI Puerto Rico Inc.; El Mofongo Ahogao Inc.,*</u> *SJ2024CV00677.*[104]

Aunque, el Canon 34 de Ética Profesional de Abogados y Abogadas, de ordinario está previsto para aquellos abogados que sin ser requeridos buscan por sí o por terceros casos o reclamaciones; también, resulta apropiado para aquellos abogados que alienten o estimulen, en alguna forma, a clientes potenciales a reclamaciones judiciales.

En específico, el referido canon establece lo siguiente:

**Canon 34.-Instigación o Gestión de Pleitos**

> *Actúa contrario a los altos postulados de la profesión el abogado que, con propósito de lucro y sin ser requerido para que ofrezca su consejo o asesoramiento legal,* **aliente o estimule, en alguna forma, a clientes potenciales para que inicien reclamaciones judiciales o de cualquier otra índole.** *Es también contrario a la sana práctica de la profesión el que un abogado, sin ser requerido, bien lo haga personalmente o a través de personas, investigue o rebusque defectos en títulos u otras posibles fuentes o causas de reclamaciones a los fines de beneficiarse en alguna forma mediante la prestación de sus servicios profesionales.*
> **Empaña la integridad y el prestigio de la profesión y es altamente reprobable el que un abogado, actuando directamente o a través de intermediarios o agentes, haga gestiones para proporcionarse casos o reclamaciones en que intervenir o para proporcionarlos a otros abogados.**[105]

---

[103] *Id.*

[104] Véase, alegación número 13 de la demanda.

[105] 4 LPRA Ap. IX, C. 34. (Énfasis suplido)

Nótese, que al instar demandas tipo *"Drive-by/Google lawsuit"*, o mediante verificación de páginas web de Facebook, *Discover Puerto Rico y Tripadvisor*, para entonces visitar el lugar que eventualmente será demandado por su cliente, ello empaña la integridad y el prestigio de la profesión legal honesta.

Peor aún, es altamente reprobable que el licenciado Vélez Colón, aliente o estimule al señor Betancourt Colón, so color de que es un autodenominado *"tester"* de derechos civiles bajo la Ley ADA, a iniciar una serie de reclamaciones judiciales faltos de buena fe.

Recordemos que no debemos ignorar el requisito de buena fe, pues es una exigencia general de nuestro derecho, y como tal, se extiende a la totalidad de nuestro ordenamiento jurídico.[106] En ese sentido, la buena fe tiene consigo un contenido ético que abarca toda la actividad jurídica.[107]

En ese orden, es menester y obligación de este Panel de Jueces, expresar al licenciado Vélez Colón y al señor Betancourt Colón que desistan de esta práctica reprochable, de ir a la casería de casos —que conforma una visión distorsionada y abusiva del derecho— para provocar demandas "artificiales" que redundan en un claro abuso del derecho y contraviene el propósito social y económico de la Ley ADA.

En consecuencia, reafirmamos la sanción económica de $5,000 que obra en la opinión mayoritaria contra la parte apelante, señor Faustino Betancourt Colón.

Y de igual modo, nos hacemos eco del referido al Comité de Ética Profesional de Abogados y Abogadas del Tribunal Supremo de Puerto Rico al licenciado José Carlos Vélez Colón.

---

[106] *Velilla v. Pueblo Supermarkets, Inc.*, supra, a las págs. 587–588.
[107] *Id.,* a la pág. 588.

**-IV-**

Por los fundamentos expuestos, emito este voto particular y de conformidad con la mayoría.


Roberto Rodríguez Casillas
Juez de Apelaciones